# Richmond

STATE BOARD OF EDUCATION V. COLEY H. CARWILE, ET ALS.

AND

STATE BOARD OF EDUCATION V. N. N. HOLT, ET ALS.

January 13, 1938.

Present, All the Justices.

The opinion states the case.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Special Assistant,* for the plaintiffs in error.

*Royston Jester, Jr.,* and *J. Tinsley Coleman, Jr.,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

In these two cases the plaintiffs seek by mandamus to compel the State Board of Education to strike certain names from its list of those eligible for appointment by local boards to the position of division superintendent of schools.

They differ in some unimportant particulars, but when a certain controverted matter of law is determined, both of them will have been decided on their merits.

Code 1936, section 649, in part provides as follows:

"No one shall be eligible for appointment as division superintendent unless he meets the minimum qualifications set up by the State Board of Education, and in order that an applicant for the position of division superintendent may know what qualifications are required of him, the State Board of Education is hereby required to publish on the first of February of the year in which such election is to take place, a statement showing the minimum qualifications for the position of division superintendent of schools, which statement shall be furnished to all applicants. The superintendents at present in office shall continue therein until their present terms expire."

In accordance with these requirements, the defendant on February 1, 1937, published this statement, setting out what it contends are adequate minimum qualifications:

"Holder of the master's degree, with at least fifteen semester hours in professional training, including courses in finance and administration, and three years of practical experience as school principal or supervisor.

"General administrative ability as evidenced by practical experience in business or in the business administration of education.

"The college training or experience of the applicant shall have been within a period of ten years from the date of the application for a superintendency, unless the applicant has during such time been performing the functions of the superintendent.

"Division superintendents now in service shall be considered to have met the eligibility requirements which were in force at the time of the beginning of their continuous service, and shall not be removed from the list of eligibles because of subsequent changes in eligibility requirements which may have been made during the period of their continuous service."

By section 130, Constitution of 1902, a State Board of Education was created. By section 132, it was authorized to divide the State into appropriate school divisions.

"* * * It shall, subject to the confirmation of the Senate, appoint, for each of such divisions, one superintendent of schools, who shall hold office for four years, and shall prescribe his duties, and may remove him for cause and upon notice."

"It shall have authority to make all needful rules and regulations for the management and conduct of the schools, which, when published and distributed, shall have the force and effect of law, subject to the authority of the General Assembly to revise, amend, or repeal the same."

The legislature undertook to deal with this subject, Acts 1916, p. 789. That portion of it relevant here reads:

"Within thirty days before April first, nineteen hundred and seventeen, and every four years thereafter, the State board of education shall, subject to the confirmation of the Senate, appoint one division superintendent of schools for each school division that the State board may, etc. The board shall not consider for division superintendent of schools any man who does not hold, or has not held a State teacher's license the equivalent of a first grade certificate, or who has not already held the office of division superintendent, or who has not been a teacher for such number of years as the board may designate, and in order that an applicant for the position of division superintendent may know what qualifications are required of him, the State board of education is hereby required to publish on the first day of February of the year in which said election is to take place, a statement showing the minimum qualifications for the position of division superintendent of schools, which statement shall be furnished to all applicants on request."

Here the legislature itself undertook to fix minimum qualifications. No unbending test was adopted. Academic qualifications are balanced against practical experience. Either might be enough. These requirements were carried into the Code of 1919, section 624.

Our Constitution was revised in 1928. In that revision the power to appoint the State board was vested in the Governor, section 130. Power to appoint division superintendents, subject to confirmation by the Senate, was taken from it, and in lieu thereof it was required to certify to the several local school boards a list of eligibles, "having reasonable academic and business qualifications," and from that list superintendents were to be selected by the local board, section 132.

In anticipation of these constitutional changes, the legislature in 1928 (Acts 1928, pp. 1186-1201) omitted the former provision fixing minimum qualifications for division superintendents, and delegated that power to the State Board of Education.

"No one shall be eligible for appointment as division superintendent unless he meets the minimum qualifications set up by the State board of education, and in order that an applicant for the position of division superintendent may know what qualifications are required of him, the State board of education is hereby required to publish on the first of February in the year in which such election is to take place, a statement showing the minimum qualifications for the position of division superintendent of schools, which statement shall be furnished to all applicants."

In the event of a constitutional change, it was further provided that "the superintendents at present in office shall continue therein until their present terms expire."

The anticipated amendments to the Constitution of 1902 were adopted in 1928, and in 1930 the legislature (Acts of Assembly, p. 883, section 649), taking cognizance of these amendments, again dealt with this subject and amended its own act of 1928.

The only part of this amendment relative to the inquiry here is that which deals with the retention of division superintendents then in office. The provisional part of the act of 1928 was made absolute. The State Board was again given power to fix minimum qualifications, but it was again declared that no rules or standard which it might adopt

should affect superintendents then in office during their present terms.

That is to say, the State Board was given exactly the same power to fix minimum qualifications theretofore exercised by the legislature. They could be prescribed in the alternative as the legislature had theretofore prescribed them.

Pursuant to these constitutional and statutory provisions, the State Board on December 4, 1931, proceeded to exercise in this manner the power vested in them:

"Holder of the M. A. degree or its equivalent in graduate study, with at least fifteen semester hours in professional training, including courses in finance and administration, and three years of practical experience as school principal or supervisor.

"General administrative ability as evidenced by practical experience in business or in the business administration of education.

"The college training or experience of the applicant shall have been within a period of ten years from the date of the application for a superintendency, unless the applicant has during such time been performing the functions of the superintendent."

Under them certain designated academic attainments, professional training, and practical experience were all prerequisite requirements. Nothing was said about division superintendents then in office.

On March 26, 1936, Acts of Assembly, pp. 497, 501, Code, section 649, was again amended, but it was not changed relative to the issue here. The State Board was again given power to fix minimum qualifications. It was required to furnish a statement of them to all applicants, and it was again provided that "the superintendents at present in office shall continue therein until their present terms expire."

It was after this, and on February 1, 1937, that the minimum requirements set out by the State Board in its order of December 4, 1931, were changed to the form in which they now appear. These present requirements have already

been stated. Certain academic attainments and administrative ability, or service as superintendent and now actually in office, each is sufficient.

■ If the State Board had power on December 4, 1931, to promulgate those rules which then issued, it had power to change them, and to make its minimum requirements in the alternative, as did the legislature in 1916. "A breath can make them as a breath hath made." The only limitation upon their power is this constitutional one: "The list shall be of persons having reasonable academic and business qualifications." Const. section 132. Moreover, the legislature itself delegated to the board exactly those powers which it had theretofore undertaken to exercise.

■ It is contended that this provision, "the superintendents at present in office shall continue therein until their present terms expire," necessarily indicates that the academic attainments which they must then have had and the business qualifications gathered from their experience in office, taken together, is not a minimum requirement which authorizes the State Board to place them, without further qualifications, upon its list of eligibles.

It first appeared in the Act of 1928 and has since appeared in each subsequent amendment to the Code.

Plainly the Board in its discretion may adopt more than one test of efficiency. All that is required is that those who appear upon the list shall have reasonable business and academic qualifications. That these division superintendents then in office did possess them is manifest from the legislative declaration relied upon to defeat their appointment, for it is expressly stated that they may continue in office during their present terms. If they did not then have reasonable academic and business qualifications, they could not, under the very language of the Constitution, hold over for a day. Therefore the legislature must have been of opinion that they were duly qualified, adequately evidenced by actual service in office. In declaring that they might hold over, it is not to be presumed that the legislature exceeded its constitutional power. If they were qualified, such

qualifications as they had may be accepted as a minimum requirement.

Plaintiffs further contend that the State Board, by practical construction of its own rules, had indicated that it did not believe that division superintendents in office were entitled to any special consideration. It is perfectly true that such a construction, continued for years, is entitled to great weight. *Hunton* v. *Commonwealth,* 166 Va. 229, 183 S. E. 873.

They point to the fact that in setting up the minimum requirements of December 4, 1931, the Board, in its preamble thereto, declared its purpose to select only individuals of high attainments, and that on March 30, 1932, State Superintendent Hall was directed to notify all on the eligible list prior to December 4, 1931, of the rules adopted that they might be given until September 1, 1935, to prepare themselves to meet new requirements, and that these requirements were further advanced by the amendment of October 27, 1932, which made a master's degree essential and struck out "or its equivalent in graduate study." It must be conceded that the Board was inapt in its choice of language if it did not intend to apply its new regulations to those then in office.

The Board, in its sworn answer, says that they did not apply and never were intended to apply to them, and that they were never given actual notice of the new requirements. To remove all question as to their status, it, by resolution of June 25, 1936, said:

"Division superintendents now in service shall be considered to have met the eligibility requirements which were in force at the time of the beginning of their continuous service, and shall not be removed from the list of eligibles because of subsequent changes in eligibility requirements."

It is true that mandamus is a common law writ. Proceedings under it were dilatory and complicated, but are now largely statutory. Code 1936, ch. 239, section 5831 *et seq.*

Where cases are submitted, as these are, on sworn petition and sworn answer without evidence, the practice may well be assimilated to that in chancery. *Rinehart & Dennis Co.* v. *McArthur,* 123 Va. 556, 96 S. E. 829. If this practice be not adopted, plaintiffs can in no event prevail. No evidence has been taken and no order can rest alone upon the unsupported allegations of the petition. *Supervisors of Cumberland County* v. *Randolph,* 89 Va. 614, 16 S. E. 722. Assuming, as we do, that the rules of equity may be adopted in considering the petition, the answer and the petition of intervenors, actual construction of the Board's requirements by the Board itself does not support plaintiffs' claim.

If we assume that the order of December 4, 1931, and that of October 27, 1932, did not place division superintendents then in office in a class apart, they are undoubtedly so placed by the order of February 1, 1937. And, as we have seen, the Board had the right to change from time to time minimum requirements theretofore set up.

In cases of this character the argument of *ab inconvenienti* is entitled to great weight. *Virginia Coal & I. Co.* v. *Keystone Coal & I. Co.,* 101 Va. 723, 45 S. E. 291.

There are fifty-six division superintendents in this challenged class. To remove them would throw our public school system into regrettable confusion. Certainly it would not promote its interest.

Plainly they are not to be favored over other eligibles. The local boards might have selected them, or they might have selected any other names which appeared upon the list. The State Board should certify its full list to the local boards. When this is done, its powers and duties are at an end, unless they, or any of them, should fail to act—a somewhat remote contingency.

The court below was of opinion that neither W. Dearing Cox nor J. J. Fray, holdover division superintendents, are qualified and should be removed. In this we think it was in error.

Again, the proper function of mandamus is to enforce ministerial action. It is not available where discre-

tion is involved, and, as we have seen, the State Board of Education is measurably vested with it and must determine what are reasonable academic and business qualifications.

It follows that the order appealed from should be reversed and the petitions dismissed. It is so ordered.

*Reversed.*