# Staunton

RICHMOND-GREYHOUND LINES, INCORPORATED v. F. A. DAVIS, STATE
HIGHWAY COMMISSIONER OF VIRGINIA, ET AL.

September 10, 1958.

Record No. 4877.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*R. Harvey Chappell, Jr.* (*John C. Goddin; Alex W. Parker; Shew-
make, Gary, Goddin & Blackwell; Christian, Barton, Parker & Boyd,*
on brief), for the petitioner.

*Francis C. Lee, Assistant Attorney General (A. S. Harrison, Jr., Attorney General, on brief), for the respondents.*

SNEAD, J., delivered the opinion of the court.

On April 11, 1958, Richmond-Greyhound Lines, Incorporated filed in this court an original petition for a writ of mandamus against F. A. Davis, State Highway Commissioner, the members of the State Highway Commission, and Citizens Rapid Transit Company, after having served on them proper notices of the intended application and copies of the petition.

The allegations in the petition may be summarized as follows:

Petitioner is a "common carrier by motor vehicle" as defined by § 56-273, Code 1950, and is engaged in the transportation of passengers as such among various points and places in this Commonwealth. Included is the operation across Hampton Roads and James River Bridge which was authorized by certificate of public convenience and necessity No. P-1245, issued by the State Corporation Commission on June 30, 1941.

The Commission, on July 9, 1956, issued to petitioner another certificate of public convenience and necessity, numbered P-1245-B, authorizing the transportation of passengers and their baggage, mail, express and newspapers as a common carrier, "between Norfolk, Virginia, and Warwick, Virginia, serving Hampton and Newport News via the Hampton Roads Tunnel Project." This certificate was to become effective upon opening of the bridge-tunnel project for motor vehicle traffic. The Commission has issued no other certificate of public convenience and necessity for operation via the Hampton Roads Bridge-Tunnel Project, and petitioner's certificate has not been revoked.

Virginia Department of Highways, by "Invitation to Submit Proposal for Bus Operation," dated May 20, 1957, requested proposals for operation of bus facilities through and over the Hampton Roads Bridge-Tunnel Project. The invitation is attached to the petition as Exhibit "A". Petitioner, by letter dated May 30, 1957 and attached to the petition as Exhibit "B", submitted such a proposal. In it petitioner stated that it was the only transit company or motor carrier authorized to perform the proposed service. Notwithstanding this fact the State Highway Commissioner, acting for the Highway Commission, executed a contract, dated October 4, 1957, with

Citizens Rapid Transit Company, Hampton, Virginia, to provide the agreed bus services. This contract is attached to the petition as Exhibit "C".

Since the opening of the Hampton Roads Bridge-Tunnel Project on or about November 1, 1957, Citizens Rapid Transit Company has furnished the bus facilities pursuant to its agreement with the Highway Commission. Petitioner has made demand, without success, upon the State Highway Commissioner and the State Highway Commission "for the performance of certain duties which they can and are required to perform, namely, to terminate such bus services by Citizens Rapid Transit Company through and over the Hampton Roads Bridge-Tunnel Propect and, so long as the State Highway Commission does not acquire and operate the aforesaid bus facilities but does propose to afford such bus services, to alow your petitioner to provide such bus services in accord with the aforesaid order of the State Corporation Commission dated July 9, 1956." Petitioner prays that a writ of mandamus be issued requiring the Commission and the Commissioner to act in accordance with these demands made upon them.

In the Highway Department's "Invitation to Submit Proposal for Bus Operation" (Exhibit "A"), it is stated "* * * The Department contemplates the operation of certain bus facilities within the project. Funds for such facilities have been obtained by the Department, and the Department proposes that such facilities be operated by it through a transit company as its agent. This invitation sets forth and establishes the terms and conditions pursuant to which such bus service will be furnished by the transit company and the basis for payment to the transit company for such service hereunder."

Among the provisions set forth in the invitation, the transit company is required to furnish buses, materials, service, repairs and garage facilities in connection therewith. It is also required to provide a driver pool, licenses, all insurance including liability coverage for the Department of Highways and the company as their interests may appear. The Highway Department determines the schedule of bus service, the amount of fare to be paid, and all fares deposited by patrons in locked boxes furnished by the Department shall be delivered to the Department. The invitation also provides that the Department will construct and maintain bus stations or shelters, suitable turn-outs from the main roadways or ramps and necessary parking areas at the terminal points. For its operation,

the company is to receive the sum of $12,000 annually, payable in equal monthly installments, to cover all fixed charges including a reasonable profit, and it is to receive an additional sum for current costs, to be adjusted quarterly, of route mileage per bus, taking into consideration wages, fuel, tires and taxes. It was provided that the current cost figure, together with a detail basis for it, be submitted with the proposal.

In the agreement between the State Highway Commission and Citizens Rapid Transit Company, the successful bidder, dated October 4, 1957, it was provided that the company would receive payment of the sum of $12,000 annually plus 30.6 cents per bus-route mile for furnishing the bus services referred to in the "Invitation to Submit Proposal for Bus Operation." This document was incorporated into and made a part of the agreement. In case of disagreement between the parties as to whether there should be an increase or decrease in the stipulated 30.6 cents per bus-route mile, the matter shall be decided by the State Highway Commissioner. It was further provided that the State Commission could cancel the agreement without any liability on its part in event the company failed to provide the stipulated services, and unless cancelled the agreement was to remain in effect for a period of two years from the date operations began.

Albertis S. Harrison, Jr., Attorney General of Virginia, appearing for respondents, F. A. Davis, State Highway Commissioner, and the State Highway Commission filed a demurrer to the petition in which he specified eight grounds therefor. Instead of enumerating them here, we quote from respondents' brief:

"* * * The essence of Respondents' Demurrer is directed to the absence of any pre-existing, unperformed, clearly defined, ministerial official duty imposed upon the Respondents, which they have failed or refused to perform. When the foregoing grounds are coupled with the fact that Petitioner has a choice of available remedies to seek the relief here being asked, it should readily be apparent that this Court's original jurisdiction should not be invoked in this instance."

Citizens Rapid Transit Company filed no pleadings, since no relief against it was requested in the petition.

Thus the case is before us on the petition, together with exhibits, and the demurrer filed thereto.

■ The agreed question for us to determine under the pleadings

is whether mandamus is the appropriate remedy to be pursued by petitioner, in seeking the relief prayed for in its petition.

Respondents argue that this court should not entertain this proceeding for the following reasons:

"I. No clearly defined ministerial duty can be shown to be unperformed by the Respondents.

"A. The power of the State Highway Commission to operate a shuttle bus service is discretionary with that Commission.

"B. There is no duty upon the State Highway Commission to contract only with common carriers holding a certificate pursuant to Title 56 of the Code of Virginia.

"II. Mandamus does not lie to undo an act or to test the validity of an act already performed.

"III. Petitioner has an adequate remedy available."

Petitioner concedes that the power of the State Highway Commission to operate a bus service within the project is discretionary under § 33-253, Code 1950 as amended. It also concedes that under that section, as construed in *Almond* v. *Day*, 199 Va. 1, 97 S. E. 2d 824, the State Highway Commission itself is authorized to acquire and operate the bus facilities. It contends, however, that when the State Highway Commission has exercised its discretion that such services should be afforded, but that it will not acquire and operate the bus facilities itself, then its functions thereafter are not discretionary, but are ministerial and clearly defined, and that in such event it was the duty of the State Highway Commission to allow petitioner, which is the only certificated carrier, to render that service. Petitioner further contends that it does not seek to cause the respondents to undo an act, because the performance of an act contrary to a duty imposed is not a performance, and that it has no other adequate remedy to obtain the relief prayed for in its petition.

A writ of mandamus is an extraordinary remedial process, which is not awarded as a matter of right but in the exercise of a sound judicial discretion. Due to the drastic character of the writ, the law has placed safeguards around it. Consideration should be had for the urgency which prompts an exercise of the discretion, the interests of the public and third persons, the results which would follow upon a refusal of the writ, as well as the promotion of substantial justice. In doubtful cases the writ will be denied, but where the right involved and the duty sought to be enforced are clear and

certain and where there is no other available specific and adequate remedy the writ will issue. It will not lie where it would serve no useful purpose or where it would work an injustice or hardship or be harmful to the public interests. 34 Am. Jur., Mandamus, § 32, p. 829.

Mandamus will issue to compel public officers to execute their purely ministerial duties under the law, but where the public officer or board is vested with a discretion or judgment, their actions cannot be controlled or reviewed by mandamus in the absence of statute providing therefor. If they refuse to exercise their discretion, they may be compelled to do so by mandamus. 12 M. J., Mandamus, § 14, p. 357. We have no such statute in this Commonwealth.

In 55 C. J. S., Mandamus § 51, pp. 87, 88 it is said:

"Before the writ may properly issue, at least three elements must coexist: (1) The existence of a clear right in plaintiff or the relator to the relief sought, * * *. (2) The existence of a legal duty on the part of respondent or defendant to do the thing which the relator seeks to compel, * * *. (3) The absence of another adequate remedy at law, * * *, and, although the co-existence of these elements, standing alone, will not always suffice to justify the issuance of the writ, in the discretion of the court, * * *, the absence of either of these elements will make the issuance of the writ invalid."

In the early case of *Page* v. *Clopton*, 71 Va. (30 Gratt.) 415, 417, Judge Burks, in discussing the writ, stated:

"The office of the writ of *mandamus* is to compel corporations, inferior courts and officers to perform some particular duty incumbent upon them, and which is imperative in its nature, and to the performance of which the relator has a clear legal right, without any other adequate specific legal remedy, to enforce it; and even though he may have another specific legal remedy, if such remedy be obsolete or inoperative, the *mandamus* will be granted. * * * The remedy is extraordinary, and if the right is doubtful, or the duty discretionary, or there be any other adequate specific legal remedy in use, this writ will not be allowed."

And in the recent case of *Vaughan* v. *Board of Embalmers*, 196 Va. 141, 152, 82 S. E. 2d 618, we restated the principle that where an officer or a board is vested with discretion, such discretion cannot be controlled or reviewed by mandamus. *State Board of Education* v. *Carwile*, 169 Va. 663, 673, 674, 194 S. E. 855.

█ We held in *Almond* v. *Day, supra,* that the provision in

§ 33-253, Code 1950, as amended, which authorizes the State Highway Commission to provide "bus facilities for the transportation of passengers through and over said project" does not violate Section 185 of the Constitution.

That Section of the Code, which is a portion of the State Revenue Bond Act, reads in part as follows:

"* * * For the purposes of this § 33-253 the word 'project' shall, in relation to the project described in said paragraph (j), include approach highways thereto and bus facilities for the transportation of passengers through or over said project if the Commission shall deem it advisable to construct such approach highways or acquire such bus facilities; and the term 'cost of the project' shall, in relation to the projects described in said paragraphs (b) and (j), include an amount sufficient to reimburse the Commission for expenditures or advances theretofore made by the Commission on account of the cost of either or both of said projects, and shall, in relation to the project described in said paragraph (j), include provision of a sum, deemed by the Commission to be sufficient for the purpose, to be utilized by the Commission for the payment of employment severance benefits to employees of the Commission rendering services in connection with the projects mentioned in paragraphs (g) and (i) of subsection (2) of said § 33-228, and shall include the cost of constructing approach highways and of providing bus facilities if the Commission shall deem it expedient to construct such approach highways or acquire such facilities as a part of the project described in said paragraph (j). * * *"

We do not interpret the word "acquire" as used in the above quoted section to denote ownership alone. This word not only has the meaning to obtain as one's own, but also has the meaning of "procure". The Highway Commission had the right to "acquire such bus facilities" by purchase, lease or by contracting with private enterprise to provide the desired services as its agent, as was done here. It also had the right not to provide any bus facilities. It was a discretionary duty to be performed and not a clearly defined ministerial one imposed upon the respondents. Such being the case an essential element for mandamus is lacking and that is not the appropriate remedy to be pursued by petitioner for the relief sought.

Having reached this conclusion we do not deem it necessary to discuss other phases of the case argued in the briefs.

For the reasons stated the respondents' demurrer to the petition is sustained and the petition for a writ of mandamus is dismissed.

*Demurrer sustained and the petition dismissed.*

MILLER, J., dissenting in part.

In the majority opinion it is stated that the question presented for decision by the pleadings (the petition and demurrer) "is whether mandamus is the *appropriate remedy* to be pursued by petitioner in the relief prayed for in its petition." (Emphasis added.) The opinion concludes by sustaining the demurrer and *dismissing* the petition. It thus holds that mandamus is not the appropriate remedy to be invoked, yet it does not indicate the proper remedy.

I take no issue with the opinion insofar as it holds that an action by mandamus is not an appropriate remedy. I think a proceeding under the declaratory judgment act, § 8-578, *et seq.*, Code 1950, offers a more appropriate means to determine the rights of the several litigants than does an action of mandamus. The demurrer should have been sustained solely on that ground and the petition dismissed, and nothing should have been said about the powers and rights of the litigants. 34 Am. Jur., Mandamus, § 42, p. 835; 12 M. J., Mandamus, § 9, p. 346. However, as the powers of the State Highway Commission, (hereinafter at times called the Commission) under the questioned legislation are stated, the rights of litigants discussed, and the case, in reality, decided upon its merits, I am constrained to express my disagreement with that part of the opinion.

The majority opinion is a significant sequel to the decision in *Almond* v. *Day*, 199 Va. 1, 97 S. E. 2d 824, from which I dissented. It was there held that § 33-253, as amended by Acts 1954, ch. 319, did not violate § 185 of the Constitution of Virginia, and that the Commission was empowered to provide and operate a garage and terminal facilities and a fleet of busses for the transportation of passengers for hire over the bridge-tunnel project. There the court quoted as follows from Code § 33-253, as amended by Acts 1954, ch. 319, p. 389.

" "* * * For the purposes of this § 33-253 the word "project" shall, in relation to the project described in said paragraph (j), include * * * bus facilities for the transportation of passengers through or

over said project if the Commission shall deem it advisable to * * * *acquire* such bus facilities, and the term "cost of the project" shall, * * * include the cost of * * * providing bus facilities if the Commission shall deem it expedient to * * * *acquire* such facilities as a part of the project described in said paragraph (j). * * *' " (Emphasis added.)

Mr. Justice Eggleston speaking for the majority then said:

"Pursuant to this authority the State Highway Commission proposes to provide and put into operation a shuttle bus system running from a terminal on LaSalle avenue in the city of Hampton to a terminal either at Willoughby Spit or at Ocean View in the city of Norfolk. The proposed bus operation will extend a distance of from six to nine miles, depending upon the location of the Norfolk terminal. The location of these terminals will afford passengers using the bridge-tunnel project access to the local transit system. Six busses will be required to provide the necessary service upon schedules varying with traffic conditions. A single garage, located in the city of Hampton, will be provided for the storage, servicing and maintenance of the equipment. *It is estimated that the total cost of constructing the garage and acquiring the busses will amount to $315,000, and that thirty-one employees will be required to operate and maintain the bus system.*" (Emphasis added.) *Almond* v. *Day, supra,* at page 4.

It will be observed that in the paragraph quoted by the court from § 33-253 it omitted some language, the pertinency of which now appears from that part italicized in the margin.[1] The significance of the omitted language is now manifest for it clearly indicates that

---

[1] "* * * For the purposes of this § 33-253 the word 'project' shall, in relation to the project described in said paragraph (j), include approach highways thereto and bus facilities for the transportation of passengers through or over said project if the Commission shall deem it advisable to construct such approach highways or acquire such bus facilities; and the term 'cost of the project' shall, in relation to the projects described in said paragraphs (b) and (j), include an amount sufficient to reimburse the Commission for expenditures or advances theretofore made by the Commission on account of the cost of either or both of said projects, and shall, *in relation to the project described in said paragraph (j) include provision of a sum, deemed by the Commission to be sufficient for the purpose, to be utilized by the Commission for the payment of employment severance benefits to employees of the Commission rendering services in connection with the projects mentioned in paragraphs (g) and (i) of subsection (2) of said § 33-228,* and shall include the cost of constructing approach highways and of providing bus facilities if the Commission shall deem it expedient to construct such approach highways or acquire such facilities as a part of the project described in said paragraph (j). * * *"

the legislative intent was that those operating the bus facilities would be employees of the Commission, thus disclosing that it was intended that the Commission would *acquire and operate* the facilities itself.

Even with the expressive and meaningful italicized language omitted, certainly from what was quoted by the court from § 33-253, as amended, Acts 1954, ch.319, and what was said immediately following the quotation, it is clear that the court then construed the statute under the belief (and rightly so from the exhibits in evidence and arguments at bar) that the Commission intended to *construct the garage facilities, acquire the necessary busses by purchase and operate the "shuttle bus system" itself.*

The bridge-tunnel project is a work of internal improvement and the source of the State's right to construct, maintain and operate it is by virtue of the exception in § 185 of the Constitution which excludes "public roads" from the prohibition forbidding the State to "become interested in any work of internal improvement, except public roads and public parks, or engage in carrying on any such work; * * *"

The majority opinion in *Almond v. Day, supra*, determined and held that the acquisition and operation of the garage and bus facilities were necessary to the maintenance and operation of the bridge-tunnel project and were a part of the internal improvement.

It must also be kept in mind that the Commission's right to acquire the garage facilities and busses, and operate the busses over this stretch of road are dependent upon the fact that the shuttle bus system was held to be a part of this unique stretch of "public roads."

In *Almond v. Day, supra*, in comparing the maintenance and operation of the shuttle bus facilities by the Commission to the maintenance and operation of a ferry as a part of the road, the court said:

"* * * Both operations are incidental and necessary to the main purposes of the highway, both are in the exercise of the State's governmental functions, and not within the restrictive provision of Section 185.

"Indeed, we agree with the Attorney General that the *acquisition* and *operation* of the proposed bus facility are just as much an integral part of the highway as are the acquisition and operation of a ferryboat. Without such an adequate bus facility the bridge-tunnel project, as an essential link in the State highway system, will be incomplete and fall short of its full purpose in that it provides no facilities for the passage of pedestrians over it." (Emphasis added.) At page 10.

The exception in § 185 of the Virginia Constitution, which excludes public roads from the category of internal improvements in which the State may not be interested, and thus allows the State to build, maintain and operate public roads; the fact that public roads are works of internal improvement and the maintenance and operation of public roads are governmental functions; the purpose of § 33-252, as amended, and its provision for payment of severance benefits to the Commission's employees rendering services in connection with the project; and the evident meaning accorded the word "acquire" in interpreting § 33-253 in *Almond* v. *Day, supra,* where it was said at page 4 that the "total cost of constructing the garage and acquiring the busses will amount to $315,000 and thirty-one employees will be required to operate and maintain the bus system" constrain me to believe that "acquire" as used in the statute was not intended to be accorded the same connotation as the word "procure." Nor can I agree that "acquire," as used in the statute, authorizes the Commission to contract with a private enterprise to provide the shuttle bus service as its agent.

Yet in the majority opinion at hand, it is now said that the word "acquire" as used in the statute authorizes the Commission to "procure" the necessary busses by purchase or lease or *by contracting* with the Citizens Rapid Transit Company to provide and operate the shuttle busses as the agent of the Commission.

The meaning now accorded the word "acquire" and the interpretation of the language of the statute by the court presents an incongruous situation indeed. The Commission was, under the majority opinion, in *Almond* v. *Day, supra,* held to be authorized to operate the shuttle bus system because it is incidental to and a part of this stretch of public road. But now the Citizens Rapid Transit Company, said at bar to enjoy the charter powers of a common carrier of passengers, is operating the shuttle bus system as the Commission's agent.

In this undertaking, the Commission, as principal, is engaged in the exercise of governmental powers and functions and enjoys the immunity of the State from suit for tortious injury to a passenger. 17 M. J., State, § 25; *Wilson* v. *State Highway Commissioner,* 174 Va. 82, 4 S. E. 2d 746; *Hicks* v. *Anderson, State Highway Commissioner,* 182 Va. 195, 28 S. E. 2d 629. Citizens Rapid Transit Company may not be held to the degree of care owed by a common carrier to a passenger, for it is likewise engaged in the performance

of governmental functions, *i.e.*, maintenance and operation of a highway as agent of the Commission. In fact, on principle it is doubtful if the company may be held liable at all for the negligent injury of a passenger while acting within the scope of its agency and employment. 17 M. J., State, § § 25, 26, and cases cited.

This presents a typical example of the undesirable results that may be expected when the State is permitted to exceed its true governmental powers (in this instance, the construction, maintenance and operation of *public roads* allowed by § 185 of the Constitution) and undertakes to engage in private enterprise, *i.e.*, the operation of a bus system for the transportation of passengers for hire.

The opinion in *Almond* v. *Day*, *supra*, liberalized and broadened the meaning of the words "public roads" beyond their accepted and historical scope, and thereby placed the State in the transportation business under the guise of maintaining and operating a public road. The present opinion gives to the word "acquire" as used in § 33-253 a more inclusive and broader meaning than deserved or intended by the legislation. In each of these decisions the court has failed to envision its ultimate legal effect or to weigh its consequences upon the scales of reality.

It may be now pertinently asked: Since when have common carriers of passengers been empowered, either in their own right or as agents of the State Highway Commission, to acquire, maintain and operate a part of the "public roads" (which these shuttle bus facilities were held to be in *Almond* v. *Day*, *supra*), and thus exercise governmental powers and functions?