### Richmond

B. Lynette Banks, et al.

v.

Joseph B. Sellers, et al.

September 9, 1982.

Record No. 791850.

Present: Cochran, Poff, Compton, Thompson, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*Susan G. Moenssens (Moenssens & Moenssens*, on brief), for appellants.
*Joseph P. Rapisarda, Jr., Assistant County Attorney (William G. Broaddus, County Attorney; J.T. Tokarz, Assistant County Attorney*, on brief), for appellees.

THOMPSON, J., delivered the opinion of the Court.

In this appeal the sole issue is whether a plea of sovereign immunity is available to a division superintendent of schools and a high school principal in a negligence action.[1]

B. Lynette Banks, a public high school student, was cut and stabbed by another student, Novita L. Goode, on school premises during school hours. Banks alleges that Joseph B. Sellers, Division Superintendent of Henrico County Public Schools, and Colin G. Steele, Principal of Henrico High School, negligently failed to provide a safe environment for her.

## I. *Present State of the Law.*

In recent years, we have considered several cases involving sovereign immunity pleas, and we think it appropriate to review briefly our holdings in each.

In *Kellam* v. *School Board*, 202 Va. 252, 117 S.E.2d 96 (1960), the plaintiff sustained personal injuries at a concert at a junior high school which the School Board had leased to a private operator to whom plaintiff had paid an admission charge. The plaintiff charged that the School Board was negligent in failing to maintain common passageways in a reasonably safe condition. We held that the School Board was immune from liability for tortious injury since it was a governmental agency or arm of the state and

---

[1] This claim arose on November 21, 1975, therefore, we are not concerned with the Virginia Tort Claims Act, Code §§ 8.01-195.1 to -195.8 (Supp. 1982), which applies to claims accruing on or after July 1, 1982, or the statute compensating victims of crime, Code §§ 19.2-368.1 to -368.18 (Supp. 1982) which does not apply to any crimes occurring prior to July 1, 1977.

acted in a governmental capacity in the peformance of its duties imposed by law.

In *Crabbe* v. *School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968), a student sustained a hand injury while being instructed by his teacher on the use of a power tool. The student claimed that the School Board was negligent because the power tool was defective and improperly equipped, and that the teacher was negligent in permitting use of the defective tool and improperly instructing the student in its use. Consistent with the holding in *Kellam*, we held that the School Board was performing a governmental function and, therefore, was immune and not liable for personal injuries sustained by a pupil as a result of the negligence of the teacher. However, we held that, despite the immunity of the School Board, the teacher, in his individual capacity, was not immune as an employee of the governmental unit and thus was liable for his own negligence.

In *Lawhorne* v. *Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), Lawhorne died 16 days after receiving a severe blow on his head. In a negligence action against the Chief Administrator, the Assistant Administrator, and a surgical intern of the University of Virginia Hospital, Lawhorne's widow alleged that the intern had misdiagnosed Lawhorne's injury and that the procedures employed by the Hospital were inadequate and improper. We held that, under the doctrine of sovereign immunity, a hospital which is an organ of the state is immune from actions in tort, and that an administrator who performs supervisory functions or exercises discretionary judgment within the scope of his employment is also immune. This immunity was extended to the intern since he exercised discretion and judgment as to persons who presented themselves in the emergency room of the hospital. "In performing these duties he was required, in the exercise of his best judgment, either to treat and release the patients or to treat and admit them to the hospital." 214 Va. at 408, 200 S.E.2d at 572.

In *Short* v. *Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979), we reversed a lower court decision which granted sovereign immunity to a high school's athletic director, baseball coach, and building and grounds supervisor when a student fell on broken glass while running on the school's outdoor track. We relied on *Crabbe* and held that, since the individual defendants, as employees, did not enjoy the governmental immunity afforded to the School Board,

they were responsible for their acts of simple or ordinary negligence.

More recently, in *James* v. *Jane*, 221 Va. 43, 267 S.E.2d 108 (1980), we were faced with the issue whether a physician, employed by a state agency and practicing in a hospital operated by such an agency, should be immune from an action for his negligence, *i.e.*, for his failure to exercise reasonable care in attending a patient. There, we held:

A failure to use such care in the treatment of patients is a violation of their duty to the patients and a departure from a condition of their employment. A physician who fails to use reasonable care in the treatment of a patient acts at his own risk, and is not entitled to invoke the doctrine of sovereign immunity.

221 Va. at 55, 267 S.E.2d at 114.

Further, in *James* we enumerated the factors to be considered in deciding where the lines of immunity shall be drawn. They were (1) function of the office; (2) the use of judgment and discretion (a consideration not necessarily determinative); and (3) degree of control and direction exercised by the state. 221 Va. at 53, 267 S.E.2d at 113. In this connection, the United States Supreme Court recently said in *Harlow* v. *Fitzgerald*, 457 U.S. 800, 813-14 (1982):

The resolution of immunity questions inherently requires a balance between the evils inevitable in any available alternative. . . . [I]t cannot be disputed seriously that claims frequently run against the innocent as well as the guilty—at a cost not only to the defendant officials, but to the society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will "dampen the ardor of all but the most resolute, or the most irresponsible [public officials] in the unflinching discharge of their duties." [Citation omitted.]

With this background, we turn now to a consideration of the different offices.

## II. *Division Superintendent.*

The present public school system had its genesis in Acts 1869-70, c. 259, which provided in pertinent part:

2. The public free school system shall be administered by the following authorities, to wit: a board of education, a superintendent of public instruction, county superintendents of schools, and district school trustees.

. . . .

14. The duties of each county superintendent of schools shall be as follows, viz:

First—To explain the school system upon all suitable occasions, and to promote an appreciation and desire of education among the people by all proper means in his power.

. . . .

Seventh—To visit and examine all the schools and school districts under his care as often as practicable, to inquire into all matters relating to their management, the course of study and mode of instruction therein, their text books and discipline, the condition of the schoolhouses, sites, out-buildings, and appendages, and in general, into whatever concerns the usefulness and perfection of the public free schools under his supervision; to examine the records and official papers of the school districts, to advise with and counsel the school trustees and teachers in relation to their duties, and to call especial attention to any neglect or violations of any laws or regulations pertaining thereto; . . . .

Acts 1869-70, c. 259 at 402, 406-07.

In *Pendleton* v. *Miller*, 82 Va. 390, 392 (1886), this court said:

It is palpable that the office of county superintendents of public free schools is a constitutional office, and that the power of removal from that office is expressly lodged by the constitution with the board of education, for cause and upon notice to the incumbents, subject to confirmation by the senate.

This method of selection of the county superintendent continued until the constitutional revision of 1928. In *State Board of Educa-*

*tion* v. *Carwile*, 169 Va. 663, 669, 194 S.E. 855, 856-57 (1938), we said:

> Our Constitution was revised in 1928. In that revision the power to appoint the State board was vested in the Governor, section 130. Power to appoint division superintendents, subject to confirmation by the Senate, was taken from it, and in lieu thereof it was required to certify to the several local schools boards a list of eligibles, "having reasonable academic and business qualifications," and from that list superintendents were to be selected by the local board, section 132.

Present constitutional and statutory provisions have not materially changed this. *See* Va. Const., art. VIII.

Our analysis of the statutes, constitutional provisions, and precedents convinces us that a division superintendent is a supervisory official who exercises powers involving a considerable degree of judgment and discretion.[2] Under the circumstances of this case, we hold that the division superintendent is entitled to sovereign immunity.

### III. *High School Principals.*

When the duties of the division superintendent and the high school principal are compared, it is apparent that the principal is, for his school, essentially a counterpart of the superintendent.[3] Although the fundamental authority is diminished and restricted, the function is very similar. The principal still performs a large number of discretional and managerial functions in the school and, therefore, is entitled to the same immunity.

The judgment of the lower court will be

*Affirmed.*

---

[2] The following code sections outline the general duties of a division superintendent: Code §§ 22.1-58 to -70, and -277 (1980), Code §§ 22.1-293 (1980 and Supp. 1982), and Code §§ 22.1-295, -297 (1980).

[3] The present statutes relating to school principals are Code § 22.1-293 (1980 and Supp. 1982) and Code § 22.1-277 (1980).

COMPTON, J., concurs in result.

COCHRAN, J., dissenting.

The rationale of the majority is that expressed in *Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), that agents and employees of an immune employer are immune from personal liability for negligence in the performance of discretionary duties for their employer. As I stated in my dissent in *Lawhorne*, 214 Va. at 408-09, 200 S.E.2d at 572-73, this rationale could not be reconciled with the views expressed in *Crabbe v. School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968), where a high school teacher was held not entitled to immunity from liability for negligence in instructing a student in the use of a power saw.

We returned to the sound principles of *Crabbe* in *Short v. Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979), where we held that an athletic director, a coach, and a supervisor of buildings and grounds of a public high school could not successfully plead sovereign immunity where the motion for judgment alleged that they had negligently failed to perform their duties. It was alleged that the plaintiff, a student, was injured when he fell on broken glass on school property, and that defendants had failed to establish procedures to maintain the property safely, to supervise and instruct custodial personnel, to inspect the premises, and to warn of the dangerous condition. We remanded the case to permit a factual determination whether the supervision, maintenance, and inspection of the school's athletic facilities were among the defendants' responsibilities, whether they had negligently breached any duty owed the plaintiff, and whether such breach, if any, was the proximate cause of the plaintiff's injury.

In *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980), we held that full-time faculty members at the University of Virginia Medical School could not plead sovereign immunity as a defense to a medical malpractice action, although hospital administrators and a surgical intern had been permitted to do so in *Lawhorne*.

It was my fond hope that *James* marked the demise of the *Lawhorne* rationale, but the holding in the present case shows how distressingly ill-founded was that hope. The majority opinion, which cannot be reconciled with *James*, leaves bench and bar with no consistent rule or pattern to follow. Once again, I advocate adherence to the rule for which *Crabbe* stands, that agents and em-

ployees of an immune employer are subject to suit for negligence in the performance of their duties. In accord with our decision in *Short*, I would reverse the trial court's ruling that sustained the pleas of sovereign immunity interposed by the school officials and remand the case for a hearing on the merits as to these employees.

POFF and STEPHENSON, JJ., join in dissent.