Present:  Carrico, C.J., Hassell, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

PAUL GOLDMAN, ET AL.

v.  Record No. 001947   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        September 14, 2001
WILLIAM E. LANDSIDLE,
COMPTROLLER, STATE OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Melvin R. Hughes, Jr., Judge


     In this appeal, the dispositive issue is whether "citizens"
and "taxpayers" have standing to seek a writ of mandamus against
the Commonwealth challenging the application of certain statutes
when their alleged injury is no different from that incurred
generally by the public at large.

     In April 1999, Paul Goldman and Alexander B. McMurtrie, Jr.
(collectively, the petitioners), filed a petition in the circuit
court seeking a writ of mandamus.  The petitioners asked the
court to direct William E. Landsidle, the Comptroller of
Virginia (the Comptroller), to determine that certain public
officials actually have incurred office expenses before
disbursing state funds to them for those expenses.

     The petitioners alleged that the Comptroller disburses
state funds monthly to the members of the General Assembly
pursuant to Code § 30-19.14 and Item 1A8 in the Commonwealth's
general appropriation act.  Code § 30-19.14 provides, in
material part, that "[e]ach member of the General Assembly shall

receive as an allowance for office expenses and supplies such sums as shall be set forth in the general appropriation act." Item 1A8 of the 2000 Appropriation Act authorizes payment to each member of the General Assembly certain fixed amounts per month as "[r]eimbursement for office expenses."  2000 Va. Acts of Assembly, ch. 1073 (effective July 1, 2000).[1]  The petitioners also alleged that the Comptroller disburses state funds monthly to the Lieutenant Governor, the Speaker of the House of Delegates, and the Attorney General for office expenses and supplies "not otherwise reimbursed," pursuant to appropriation Items 1A4, 44-3, and 45A2.[2]  Id. at ch. 1072-73.

---

[1]Item 1A8 provides:
Out of the amounts for Legislative Sessions shall be paid: Reimbursement for office expenses and supplies of members of the General Assembly, in the amount of $1,250 for each month of each calendar year.  An additional $500 for each month of each calendar year shall be paid to the Majority and Minority Leaders of the House of Delegates and the Senate and to the President Pro Tempore of the Senate.

2000 Va. Acts of Assembly, ch. 1073 (effective July 1, 2000).

[2]Item 1A4 provides:
Out of the amounts for Legislative Sessions shall be paid: Expenses of the Speaker of the House of Delegates not otherwise reimbursed, $16,200 each year, to be paid in equal monthly installments during the year.

Item 44-3 provides:
Expenses of the Lieutenant Governor not otherwise reimbursed, on the same basis as specified in Item 1, paragraph A 4, of this act for the Speaker of the House.

Item 45A2 provides:

The petitioners stated that the Comptroller routinely makes these payments without requiring proof from recipients that office expenses in the specified amounts actually have been incurred. The petitioners alleged that the Comptroller has a ministerial duty "to [e]nsure that state money authorized for the sole purpose of reimbursement for office expenses and supplies is not being converted to personal use." The petitioners asserted that since the Comptroller does not require recipients of such funds to submit proof of office-related expenditures, the Comptroller has failed to fulfill his statutory duties.

The petitioners alleged that as citizens of the Commonwealth and as "representatives of the people of Virginia," the petitioners may ask the courts to compel the Comptroller to perform his required duties. However, the petitioners did not allege any direct injury from the Comptroller's performance of his duties distinct from that of the public at large.

The petitioners relied chiefly on language in Code § 2.1-20.5 to support their assertion that proof of expenditures is

---

Out of the amounts for State Agency/Local Legal Assistance and Advice shall be paid:
Expenses of the Attorney General not otherwise reimbursed, $9,000 each year in equal monthly installments.

Id. at ch. 1072-73.

3

required before funds may be disbursed for these purposes. This statute provides, in relevant part:

> The salaries, expenses and other allowances, including mileage, mentioned in this chapter, Chapter 5 (§ 2.1-38 et seq.) of this title and Chapter 1.1 (§ 30-19.11 et seq.) of Title 30 shall, except where otherwise specifically provided, be paid out of the state treasury after being duly audited, and the Comptroller shall draw his warrants on the State Treasurer for the payment thereof. . . . Expenses shall be paid when they shall have been incurred, and the other allowances shall be paid when the services shall have been rendered or the travel shall have been performed.

The Comptroller filed an answer to the amended petition denying that he had failed to fulfill any ministerial duty. He also denied the petitioners' allegation that by failing to ensure that the authorized funds are "not being converted to personal use, the State Comptroller continues to expend funds in violation of the law."

The parties filed cross-motions for summary judgment. In support of their motion, the petitioners relied on the language of Code § 2.1-20.5 mandating that such disbursements "shall . . . be paid . . . after being duly audited," and on a similar statutory directive in Code § 2.1-227, which provides:

> The Comptroller shall not issue a disbursement warrant unless and until he shall have audited, through the use of statistical sampling or other acceptable auditing techniques the bill, invoice, account, payroll or other evidence of the claim, demand or charge and satisfied himself as to the regularity, legality and correctness of the expenditure or disbursement, and that the claim, demand or charge has not been previously paid. If he be so satisfied, he shall approve the same; otherwise, he shall

4

withhold his approval. In order that such regularity and legality may appear, the Comptroller may, by general rule or special order, require such certification or such evidence as the circumstances may demand.

The petitioners contended that a writ of mandamus was the proper remedy to compel the Comptroller to perform his statutory duties. They asked the court to direct the Comptroller "to examine and audit the requests for reimbursements or expenses submitted by members of the General Assembly," but made no request with regard to the Lieutenant Governor, the Speaker of the House of Delegates, or the Attorney General.

In support of his cross-motion for summary judgment, the Comptroller argued, among other things, that he has broad discretion under Code §§ 2.1-196.1 and -227 to establish policies governing internal controls over all expenditures. He further asserted that he has exercised his statutory discretion to ensure that disbursements are properly made.

After hearing argument, the circuit court entered an order dismissing the petition and granting summary judgment in favor of the Comptroller. The petitioners appealed.

The petitioners argue on appeal that as "citizens" and "taxpayers" of this Commonwealth, they have standing to seek mandamus relief to compel the Comptroller to require proof of actual expenditures before making the disbursements at issue. The petitioners contend that they are not required to

demonstrate any special or pecuniary interest in the controversy because they are merely seeking to compel the Comptroller's exercise of a statutory "public" duty. In support of this argument, the petitioners rely on our decisions in Harrison v. Barksdale, 127 Va. 180, 102 S.E. 789 (1920), and Clay v. Ballard, 87 Va. 787, 13 S.E. 262 (1891).

In response, the Comptroller asserts that the petitioners lack standing to seek a writ of mandamus. The Comptroller contends that parties seeking mandamus relief against the Commonwealth must be able to demonstrate something more than a threat to a "perceived public right," but generally must show that they have a direct special or pecuniary interest in the subject matter of the litigation. We agree with the Comptroller.

A writ of mandamus is an extraordinary remedy that may be used to compel a public official to perform a purely ministerial duty that is mandatory in nature and is imposed on the official by law. Hertz v. Times-World Corp., 259 Va. 599, 607, 528 S.E.2d 458, 462 (2000); Earley v. Landsidle, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999); Town of Front Royal v. Front Royal and Warren County Indus. Park Corp., 248 Va. 581, 584, 449 S.E.2d 794, 796 (1994); Gannon v. State Corp. Com'n, 243 Va. 480, 481-82, 416 S.E.2d 446, 447 (1992). Mandamus is awarded not as a matter of right, but only in the exercise of sound

6

judicial discretion.  <u>Hertz</u>, 259 Va. at 607, 528 S.E.2d at 462; <u>Gannon</u>, 243 Va. at 482, 416 S.E.2d at 447; <u>Board of Supervisors v. Heatwole</u>, 214 Va. 210, 213, 198 S.E.2d 613, 615 (1973); <u>Richmond-Greyhound Lines v. Davis</u>, 200 Va. 147, 151, 104 S.E.2d 813, 816 (1958).

Since the writ is drastic in character, the law has erected safeguards around its issuance.  <u>Hertz</u>, 259 Va. at 607, 528 S.E.2d at 462.  Consideration must be given to the urgency that prompts the exercise of the discretion, the public interest and interest of other persons, the results that will occur if the writ is denied, and the promotion of substantial justice.  <u>Id.</u>

In doubtful cases, the writ will be denied.  However, when the right involved and the duty sought to be enforced are clear and certain, and when there is no other specific, adequate remedy that is available, the writ will issue.  <u>Id.</u> at 607-08, 528 S.E.2d at 462-63; <u>Town of Front Royal</u>, 248 Va. at 584, 449 S.E.2d at 796; <u>Gannon</u>, 243 Va. at 482, 416 S.E.2d at 447; <u>Heatwole</u>, 214 Va. at 213, 198 S.E.2d at 615-16; <u>Richmond-Greyhound Lines</u>, 200 Va. at 151-52, 104 S.E.2d at 816.

In the present case, the petitioners rely solely on their status as citizens and taxpayers to establish standing to request mandamus relief.  Generally, we have

7

held that a party has standing to initiate litigation if the party has sufficient interest in the subject matter to ensure that the litigants will be actual adversaries and that the issues will be fully and faithfully developed. Radin v. Crestar Bank, 249 Va. 440, 442, 457 S.E.2d 65, 66 (1995); Weichert Co. of Virginia, Inc. v. First Commercial Bank, 246 Va. 108, 109, 431 S.E.2d 308, 309 (1993); Cupp v. Board of Supervisors, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984).

The purpose of requiring standing is to make certain that a party who asserts a particular position has the legal right to do so and that his rights will be affected by the disposition of the case. Cupp, 227 Va. at 589, 318 S.E.2d at 411; see W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996). Thus, a party claiming standing must demonstrate a personal stake in the outcome of the controversy. Cupp, 227 Va. at 589, 318 S.E.2d at 411 (quoting Duke Power Co. v. Carolina Env. Study Group, 438 U.S. 59, 72 (1978)).

For purposes of this standing inquiry, we treat the words "citizen" and "taxpayer" as being synonymous. We have addressed this type of standing in various suits brought by taxpayers to restrain local, rather than state, government officials from allegedly exceeding their powers

8

in a manner that would cause injury to the locality's taxpayers.

We have held that taxpayers had standing to seek in equity an accounting and reimbursement of expenditures made by members of a county board of supervisors to finance allegedly unauthorized travel.  Burk v. Porter, 222 Va. 795, 798, 284 S.E.2d 602, 604 (1981).  We also have held that taxpayers had standing to challenge an allegedly invalid agreement for the issuance of local government bonds to finance certain sanitary district expenditures. Armstrong v. Henrico County, 212 Va. 66, 76, 182 S.E.2d 35, 42 (1971).  We also have determined that taxpayers had standing to seek equitable relief to prevent local officials from lending governmental funds to an airport authority for costs incident to the construction of an airport.  Gordon v. Board of Supervisors, 207 Va. 827, 831, 153 S.E.2d 270, 273 (1967).  Likewise, we have held that taxpayers had standing to resort to equity to prevent the allegedly illegal issuance of local bonds to finance the construction of an electric generating plant.  Appalachian Elec. Power Co. v. Town of Galax, 173 Va. 329, 333, 4 S.E.2d 390, 392 (1939); Vaughan v. Town of Galax, 173 Va. 335, 341, 4 S.E.2d 386, 389 (1939).

9

The right of taxpayers to challenge the legality of expenditures by local governments is a right permitted in almost every state. Gordon, 207 Va. at 831, 153 S.E.2d at 273. This right is premised on the peculiar relationship of the taxpayer to the local government that makes the taxpayer's interest in the application of municipal revenues "direct and immediate." ASARCO Inc. v. Kadish, 490 U.S. 605, 613 (1989) (quoting Frothingham v. Mellon, 262 U.S. 447, 486-87 (1923)).

The same conclusion does not apply for federal and state taxpayers. The Supreme Court has long held that suits based on federal taxpayer status are ordinarily inadequate to establish standing to challenge laws of general application. The basis for this rule is that since a taxpayer's interest in the United States Treasury's funds is shared with several million persons, that interest is "comparatively minute and indeterminable." ASARCO, 490 U.S. at 613 (quoting Frothingham, 262 U.S. at 487). The effect on future taxation of payments made from these federal funds is so remote, fluctuating, and uncertain, that no basis is provided for judicial intervention. Id.

The Court has applied the same rule to state taxpayers, holding that they should be treated like federal taxpayers for purposes of determining standing to challenge

the application of state laws. ASARCO, 490 U.S. at 613;

Doremus v. Board of Education of Hawthorne, 342 U.S. 429,

434 (1952). Unless a state taxpayer can demonstrate a

statutory right to mandamus relief, such a taxpayer seeking

to challenge the application of a state statute generally

must be able to show direct injury, pecuniary or otherwise,

resulting from the enforcement of the statute. See ASARCO,

490 U.S. at 613-14; Doremus, 342 U.S. at 434 (quoting

Frothingham, 262 U.S. at 488).

Applying these principles, we hold that under the

present circumstances, in the absence of a statutory right,

a citizen or taxpayer does not have standing to seek

mandamus relief against the Commonwealth unless he can

demonstrate a direct interest, pecuniary or otherwise, in

the outcome of the controversy that is separate and

distinct from the interest of the public at large. The

petitioners in the present case have not identified any

such statutory right, or any direct interest in the

Comptroller's application of the statutes at issue.

Instead, they assert that our decisions in Harrison and

Clay provide them standing to seek the requested relief.

We disagree.

In Harrison, a citizen sought a writ of mandamus to

compel the trial court to order in a municipal election

11

that the issue before the voters required approval by a majority of the qualified voters entitled to vote, rather than by a majority of voters who actually cast a ballot. 127 Va. at 183-86, 102 S.E.2d at 790-91.  In addressing the citizen's standing to petition the court for mandamus relief, we held that although the citizen did not have a special or pecuniary interest in the outcome of the local election proceedings, he nonetheless had a right to seek enforcement of a ministerial duty imposed by statute.  127 Va. at 188, 102 S.E.2d at 791.

This holding is consistent with our other decisional law permitting challenges to actions taken by a local government.  As stated above, a citizen or taxpayer may challenge the legality of certain actions of a local government and its expenditures, because the interest of a citizen in matters of local government is direct and immediate, rather than remote and minute.  See Burk, 222 Va. at 798, 284 S.E.2d at 604; Armstrong, 212 Va. at 76, 182 S.E.2d at 42; Gordon, 207 Va. at 831, 153 S.E.2d at 273; Appalachian Elec. Power, 173 Va. at 332-33, 4 S.E.2d at 392; Vaughan, 173 Va. at 341, 4 S.E.2d at 388-89.  Our holding in Harrison is also consistent with the Supreme Court's analysis in ASARCO and Doremus.  See ASARCO, 490 U.S. at 613 (quoting Frothingham, 262 U.S. at 486);

12

*Doremus*, 342 U.S. at 433-34 (quoting *Frothingham*, 262 U.S. at 486).  The direct and immediate interest of the citizen in the operation of local government, whether based on issues arising from a local election or a local government's exercise of its fiscal authority, permits these citizen or taxpayer challenges.

Our holding in *Clay* does not enlarge this right of citizen or taxpayer standing.  There, a citizen sought a writ of mandamus to command the registrar of the City of Newport News to allow the petitioner to inspect and make a copy of the official voter registration books.  87 Va. at 787, 13 S.E. at 262.  We held that the petitioner had standing to seek the writ because the books in question were of a public nature, and the right to inspect them was secured by statute to each member of the general public. *Id.* at 790, 13 S.E. at 263.

In reaching this conclusion, we were guided by the language of former Code § 84, which provided in relevant part that the voter registration books "shall at all times be open to public inspection."  *Id.*  Thus, the language of the statute under which the petition was brought afforded the petitioner a legally enforceable right that gave him a direct and immediate interest in the subject of the mandamus relief sought.

13

Unlike the petitioner in Clay, the petitioners before us cannot identify any statute that gives them a legally enforceable right to have a court compel the Comptroller to perform his duties in the manner they request.  Because the petitioners cannot identify a statutory right to mandamus relief, and because they have not demonstrated that they have a direct interest in the proceedings different from that of the public at large, we hold that they lack standing to seek the requested relief.  See ASARCO, 490 U.S. at 613-14; Doremus, 342 U.S. at 434 (quoting Frothingham, 262 U.S. at 488).

For these reasons, we conclude that the trial court did not err in dismissing the petition for a writ of mandamus.  Accordingly, we will affirm the trial court's judgment.

Affirmed.