MICHAEL, Circuit Judge,
concurring in part and dissenting in part:
I concur in parts I, II, and III.A. of the majority opinion, but I respectfully dissent from part III.B. The jury’s verdict against the school board on Title IX should be reinstated because (1) Malone (the principal) had actual knowledge of a substantial risk of sexual abuse to students in her elementary school and (2) she had the authority to institute corrective measures to eliminate the risk.
Title IX provides that “[n]o person ... shall, on the basis of sex ... be subjected to discrimination under any education program or activity receiving Federal financial assistance.” 20 U.S.C. § 1681(a). A school board receiving federal funds is liable under Title IX if an appropriate official *240 has “actual knowledge of discrimination in the [board’s] programs and fails adequately to respond_ [T]he [inadequate] response must amount to deliberate indifference to discrimination.” Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).
I.
The majority affirms the grant of judgment as a matter of law to the school board, holding that under Gebser “Title IX liability may be imposed only upon a showing that school district officials possessed actual knowledge of the discriminatory conduct in question.” Ante at 238. The majority explains that “the actual notice requirement [can be] satisfied, for example, if [the appropriate official] had had actual knowledge that [the teacher] was currently abusing one of his students, even without any indication of which student was being abused.” Ante at 288 n. 9. The explanation is a step in the right direction, but it still means that the actual notice standard is satisfied only if the school board official was aware of current sexual abuse to someone in the student body (not necessarily the eventual plaintiff). This is wrong, I respectfully suggest, because Gebser does not require that the appropriate official have actual knowledge of current abuse. Rather, Gebser leaves room for an actual notice standard that requires the appropriate official to have actual knowledge of at least a substantial risk of sexual abuse (or discrimination).
Gebser held that a complaint by parents that a teacher “had made inappropriate [sexually suggestive] comments during class ... was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student.” Gebser, 524 U.S. at 291, 118 S.Ct. 1989. Thus, while Gebser makes clear that the actual notice standard requires more than a complaint about inappropriate remarks, the case does not definitively establish the boundaries of actual notice. By insisting that actual notice cannot be satisfied by anything less than actual knowledge of current abuse, the majority’s new standard “set[s] the bar [too] high.” Doe v. Sch. Admin. Dist. No. 19, 66 F.Supp.2d 57, 63 (D.Me.1999).* Under the majority’s standard a school board will escape liability even if an appropriate official knew that a teacher was engaging in behavior that raised warning flags of substantial risk as long as the official did not actually know that the teacher was abusing a student. The majority’s standard will also let a school board off the hook if its official knew that a teacher had abused a student in the past as long as the official did not know of any current abuse.
These results, brought about by a notice standard that is too restrictive, are inconsistent with the objectives of Title IX and with the actual notice and deliberate indifference theory of liability recognized by the Supreme Court. First, one of Title IX’s principal objectives is to provide effective protection against discriminatory or abusive practices in schools that receive federal funds. See Gebser, 524 U.S. at 286, 118 S.Ct. 1989. Under Title IX a school board has “a duty not to permit teacher- *241 student [sexual abuse] in its schools.” Davis v. Monroe County Bd. of Educ., 526 U.S. at 643, 119 S.Ct. 1661 (internal quotations omitted), and this duty is imposed “to induce school boards to adopt and enforce practices that will minimize the danger that vulnerable students will be exposed to such [abuse],” Gebser, 524 U.S. at 300, 118 S.Ct. 1989 (Stevens, J., dissenting). The majority’s notice standard actively undermines Title IX’s objectives because it discourages efforts to identify situations of potential abuse. The appropriate official can simply wait until she gains actual knowledge of current abuse. In short, the majority’s standard does little to prevent sexual abuse from occurring in the first place, even though prevention is the best way to further Title IX’s goal of nondiscrimination. Second, the majority’s notice standard — requiring actual knowledge of current abuse — is too restrictive to afford the full measure of protection intended under Gebser’s actual notice and deliberate indifference theory of liability. According to the Supreme Court, “If a funding recipient does not engage in [abuse] directly, it may not be liable for damages unless its deliberate indifference ‘subject[s]’ its students to [abuse]. That is, the deliberate indifference must, at a minimum, ‘cause [students] to undergo’ [abuse] or ‘make them liable or vulnerable’ to it.” Davis, 526 U.S. at 644-45, 119 S.Ct. 1661 (second and fourth alterations in original) (emphasis added) (quoting Random House Dictionary of the English Language 1415 (1966)). Thus, if a board is liable when its official’s deliberate indifference makes students vulnerable to abuse, the official’s knowledge of that vulnerability (or substantial risk) surely satisfies the actual notice standard. Under the majority’s theory, however, liability is triggered only if the official had knowledge of actual abuse.
The proper boundary for what constitutes actual notice lies somewhere between the one adopted by the majority (actual knowledge of current sexual abuse) and the one rejected by Gebser (actual knowledge of sexually suggestive comments in class). I am convinced that the actual notice requirement is met when an appropriate official has actual knowledge of a substantial risk of abuse. An appropriate official has actual knowledge of a substantial risk if she knows of facts indicating a substantial risk and she subjectively believes that the facts signal such a risk. See Rosa H. v. San Elizario Indep. Sch. Dist., 106 F.3d 648, 659 (5th Cir.1997). This is not a constructive notice or respon-deat superior theory, which would impose liability even if the appropriate official had no actual knowledge of anything. Thus, the standard I propose is consistent with Gebser. The Gebser Court was, of course, unwilling to impose liability on school districts that lack any notice of discrimination. “[A] central purpose of requiring notice of the violation ... is to avoid diverting education funding from beneficial uses where a recipient was unaware of discrimination in its programs.” Gebser, 524 U.S. at 289, 118 S.Ct. 1989. Actual knowledge of a substantial risk of abuse, however, provides fair and sufficient warning to a school board that it faces potential liability.
My interpretation of what satisfies Geb-ser ’s actual notice requirement is consistent with that of district courts that have confronted this question. See, e.g., Gordon v. Ottumwa Cmty. Sch. Dist., 115 F.Supp.2d 1077, 1082 (S.D.Iowa 2000) (actual notice “does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student. At some point ... a supervisory school official knows ... that a school employee is a substantial risk to sexually abuse chil *242 dren.”) (internal citations and quotations omitted); Massey v. Akron City Bd. of Educ., 82 F.Supp.2d 735, 744 (N.D.Ohio 2000) (“For actual notice to exist, an agent of the school must be aware of facts that indicate a likelihood of discrimination.”); Frederick v. Simpson College, 149 F.Supp.2d 826, 838 (S.D.Iowa 2001) (actual notice requires “actual notice ... that [the teacher] was at risk of sexually harassing a student.”).
The evidence in this case supports the conclusion that Malone (the principal) actually knew that Lawson (the teacher) posed a substantial risk to the students of Charles Barrett Elementary School. Leckie, one of Lawson’s former student-victims, told Malone that he had been sexually molested by Lawson. Leckie warned Malone to watch out for certain telltale signs, such as whether Lawson was spending extra time with a particular student or giving him rides home. Leckie’s mother also talked to Malone and confirmed her son’s story. Two other members of the community and a teacher informed Malone that Lawson was a pedophile who had abused students. Malone herself witnessed excessive physical contact between Baynard and Lawson in the hallway at school. Specifically, Malone noticed Bay-nard “constantly hanging onto” Lawson, and Malone recognized that this behavior was “really inappropriate for a sixth grade student.” Finally, Malone was aware of an incident of particularly flagrant behavior involving Lawson and Baynard. Newman, the school librarian, walked into Lawson’s classroom one morning before classes began and saw the following: Baynard was sitting on Lawson’s lap, Lawson had his arm around Baynard, their faces were almost touching, and Lawson was whispering to Baynard. When Lawson and Bay-nard saw Newman, an expression of shock crossed their faces. Lawson jumped up immediately, dumping Baynard on the floor. Newman “quickly turned” and walked out of the room. She was upset at what she had seen because “[i]t just didn’t look right” and “was inappropriate.” Newman “didn’t think this is anything you would do with a sixth grade boy sitting on your lap.” Newman promptly reported everything she had seen to Malone. This evidence is sufficient to establish “actual notice” under Title IX because the jury could rationally conclude that Malone knew the facts indicating that Lawson was a substantial risk and that she personally understood that risk.
II.
For a school board to be liable under Title IX, there must be actual notice to an “appropriate” official, that is, an official “who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [school board’s] behalf.” Gebser, 524 U.S. at 290, 118 S.Ct. 1989. Even though Malone, as school principal, had supervisory authority over Lawson, the majority concludes that Malone is not an appropriate official because her authority over personnel matters was limited to making recommendations and she “had no independent authority to suspend, reassign, or terminate Lawson.” Ante at 239. I disagree.
The principal is the highest ranking school official present at the school every day, and she performs many functions on behalf of the school board. Cf. Banks v. Sellers, 224 Va. 168, 294 S.E.2d 862, 865 (1982) (referring to the principal as “essentially a counterpart of the [division] superintendent”); Pleasants v. Commonwealth, 214 Va. 646, 203 S.E.2d 114, 116 (1974) (calling the principal “the duly authorized representative of the school board”). She is “responsible for the administration of and shall supervise the operation and man *243 agement of the school or schools and property to which [s]he has been assigned.” Va.Code Ann. § 22.1-293(B). See also Banks, 294 S.E.2d at 865 (noting that the principal “performs a large number of dis-cretional and managerial functions in the school”). The local school board “exercises control and direction over [a teacher] through the school principal.” Lentz v. Monis, 236 Va. 78, 372 S.E.2d 608, 610 (1988).
Virginia statutes and regulations assign to the principal the first line of responsibility for ensuring that the students in her school are safe, particularly from sexual abuse at the hands of their teachers. Cf. Pleasants, 203 S.E.2d at 116 (noting that the principal is required to “look out for the safety of the students”). Other school employees and members of the community are expected to report instances of sexual abuse to the principal. See Va.Code Ann. § 22.1-279.3:1(A) (designating principal as official to receive reports of sexual assault in school); see also Alexandria City Pub. Seh., Child Abuse and Neglect, Regulation File 2107 R# (July 15, 1981) (directing teachers to notify principal of suspected child abuse); Alexandria City Pub. Sch., Health and Safety of Pupils, Policy File 2104 (Mar. 19, 1986) (directing teachers to notify principal of classroom conditions that are dangerous to children). The principal must then report these incidents to the division superintendent, the student’s parents, and the police. See Va.Code Ann. § 22.1-279.3:1(C), (D); 8 Va. Admin. Code § 20-560-10. In this case six different people reported to Malone, under the assumption that she would implement the necessary measures to make sure Lawson was no longer a threat to the children. Because Malone was the supervisor of the school and the official designated to receive complaints about sexual assaults, the school board should not be able to avoid liability for Malone’s deliberate indifference to a known risk of teacher-on-student sexual abuse.
By emphasizing Malone’s lack of authority to suspend, terminate, or reassign Lawson, the majority has created an overly narrow concept of an official who has authority “to institute corrective measures.” Malone had the duty and authority to implement various measures that would have contributed to preventing or stopping Lawson’s abuse of Baynard. For instance, as Lawson’s supervisor, Malone could have confronted Lawson with the reports she had received and ordered him to stop the inappropriate behavior she personally witnessed. See Warren v. Reading Sch. Dist., 82 F.Supp.2d 395, 399-400 (E.D.Pa.2000) (holding that principal is an official with authority to institute corrective measures because she has supervisory authority over teachers and the power to question teachers about suspicious behavior). In addition, Malone could have given the division superintendent and the police a prompt and complete report of Lawson’s abusive behavior. See id. at 399 (concluding that the principal’s higher duty to report to appropriate authorities is a corrective measure); see also Booker v. City of Boston, No. CIV.A.97-CV 12534MEL, 2000 WL 1868180, at *3 (D.Mass. Dec.12, 2000) (holding that principal was an official with the authority to end the sexual abuse because he “not only had the authority but the obligation to notify [the Department of Social Services]” (emphasis in original)). Other corrective measures that Malone could have taken include notifying Bay-nard’s parents and properly monitoring Lawson according to the instructions of Beckhoff, the personnel director. The appropriate official’s authority to “institute corrective measures” does not have to include the authority to suspend or fire. As long as the official possesses the ability and the duty to take meaningful steps *244 toward stopping the abuse, the official’s deliberate indifference should translate into school board liability under Title IX. See Morlock v. W. Cent. Educ. Dist., 46 F.Supp.2d 892, 911 (D.Minn.1999) (holding that “as the acting principal of the [alternative school program], the school’s sexual harassment coordinator and [the harassing teacher’s] superior, Fish had the power and the official responsibility to begin the process of addressing plaintiffs complaint” of sexual harassment). Malone had the authority to initiate steps to prevent or end Lawson’s abuse of Baynard.
Under the majority’s approach, it appears that the class of appropriate officials will be limited, at least in Virginia, to school board members because only the school board has the power to suspend or terminate a teacher. See 8 Va. Admin. Code § 20-90-70. As one court has pointed out, defining the class of appropriate officials so narrowly means that “a school district would virtually never face penalties for sexual abuse of students unless school board members themselves intended the harm. By the same token, victims of abuse would virtually never be able to recover, especially in large school districts, in which school board members have little contact with the day-to-day interactions between teachers and students.” Rosa H., 106 F.3d at 659. Gebser does not require such a narrow construction. Again, an appropriate official is simply one who “has authority to address the alleged discrimination and to institute corrective measures.” Gebser, 524 U.S. at 290, 118 S.Ct. 1989. Malone, as principal, was in a position to take corrective action.
III.
In sum, the record supports the conclusion that Malone had actual knowledge that Lawson posed a serious risk and that she had the authority (but failed) to institute corrective measures to address this risk. That is sufficient under Gebser to hold the school board hable under Title IX. I would therefore reverse the district court’s order granting the school board’s motion for judgment as a matter of law.

 The majority contends that Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), removes any doubt that the actual notice standard requires actual knowledge of current misconduct. See ante at 238. I disagree. Davis’s primary point is that a school board may be liable under Title IX for student-on-student harassment. And while Davis reaffirms Gebser’s rejection of the constructive notice and re-spondeat superior theories of liability, Davis did not clarify what constitutes actual notice because notice was not at issue. Rather, Davis held that a complaint alleging that a school principal had actual knowledge of student-on-student harassment stated a claim.