UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Huff and Callins

KRISTEN INGLESE

v.       Record No. 0482-22-2

ALBEMARLE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE DOMINIQUE A. CALLINS
APRIL 25, 2023

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Claude V. Worrell, Jr., Judge

(Meghan Cloud; North Garden Legal Services, PLLC, on briefs), for
appellant. Appellant submitting on brief.

(Lauren E. Bohdan, Assistant County Attorney; William M.
Marshall, Guardian ad litem for minor child; Sheila C. Haughey,
Guardian ad litem for appellant; Albemarle County Attorney's
Office; Marshall & Marshall, P.C.; Snook & Haughey, P.C., on
brief), for appellee. Appellee and Guardians ad litem submitting
on brief.

Kristen Inglese ("Inglese") appeals the judgment of the Albemarle County Circuit Court

("circuit court") terminating her parental rights to her child, R.I.L., under Code § 16.1-283(B) and

(C)(2). Inglese argues that the circuit court erred by failing to communicate its basis for not

granting custody of R.I.L. to a person with a legitimate interest—the child's paternal grandmother—

as required by Code § 16.1-283(A). Inglese also argues that the circuit court erred in terminating

her parental rights because the foster care plan did not document that termination was in the child's

best interests, as required by Code § 16.1-283(A). Finally, Inglese argues that the circuit court's

termination decision was premature because her appeal of the circuit court's finding of abuse or

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

neglect was still pending with this Court when her parental rights were terminated. For the following reasons, we affirm the circuit court's judgment, but we remand for the circuit court to communicate to the parties, either orally or in writing, its basis for not granting custody to the child's paternal grandmother.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 452 (2022) (quoting *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018)). Here, the Albemarle County Department of Social Services ("the Department" or "ACDSS") was the prevailing party.

R.I.L. was born on January 22, 2021 to Inglese and Robert Latham ("Latham"). Prior to R.I.L.'s birth, Inglese had received no prenatal care, could not report R.I.L.'s gestational age, and had planned to give birth at home, but went to the hospital due to pain. Inglese refused the routine newborn testing and post-natal treatment at the hospital, and subsequently missed a scheduled pediatric appointment. Following a call from the hospital expressing concern over R.I.L.'s well-being, the Department became involved in the case. An ACDSS Child Protective Services ("CPS") worker conducted a virtual call with Inglese and R.I.L., during which Inglese stated that she was a Buddhist, that "mothers know exactly what their children need," and that R.I.L. was healthy. A CPS investigator visited Inglese's home and observed that R.I.L.'s skin was yellow, that he had visible leg and rib bones, and that his demeanor was very quiet. R.I.L.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues Inglese has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

was examined by a doctor, who recommended that R.I.L. be hospitalized due to malnourishment. At the time of the examination on February 19, 2021, R.I.L. weighed only 5 pounds and 11.5 ounces, which was less than his birth weight of 7 pounds and 1.8 ounces approximately 1 month before.

Inglese disputed the diagnosis of malnourishment and recommendation that R.I.L. be hospitalized, maintaining her belief that R.I.L. was "healthy." She agreed with CPS to a safety plan that would have her and Latham stay with the paternal grandparents, who would supervise R.I.L.'s feedings and ensure that he received supplemental formula. Inglese and Latham eventually left the paternal grandparents' home, in violation of the safety plan.

Another doctor expressed concern that R.I.L. "might die if he did not receive adequate nutrition," to which Inglese responded that "she did not believe in the medical profession" and that R.I.L. was not going to die because he was "surrounded by love and kindness." After examining R.I.L., the doctor observed that R.I.L. still looked "awful" and that it seemed as if mother "wanted [R.I.L.] to meditate instead of cry."

Inglese agreed to a second safety plan with CPS in which R.I.L.'s maternal grandmother, Pamela Inglese ("Pamela") would stay in the parents' home to assist with R.I.L.'s feedings and ensure he would be fed every three hours. During a home visit by CPS, CPS recommended that Pamela continue staying with the family. Inglese remarked that CPS's "bad energy" had caused R.I.L. to lose weight and that she "did not want to be involved with CPS anymore." On March 3, 2021, Pamela reported to CPS that she was afraid to remain in the parents' home due to Latham's violent behavior and believed it was in R.I.L.'s best interests to be placed out of the home. Pamela also reported that both parents had told her that they wanted her to leave the home, in violation of the second safety plan.

On March 4, 2021, the Department took custody of R.I.L. pursuant to an emergency removal order entered by the Albemarle County Juvenile and Domestic Relations District Court ("JDR court"), based on allegations that the parents had neglected R.I.L. by failing to provide him with adequate nutrition and medical care. Following R.I.L.'s removal, Inglese did not engage with any of the services recommended by the Department. Inglese failed to complete a psychological evaluation, a parenting capacity evaluation, a medical evaluation, and to participate in parent coaching. Inglese also missed a substantial portion of scheduled supervised visitation.

On March 23, 2021, the JDR court entered dispositional and adjudicatory orders finding that R.I.L. was an abused or neglected child under Code § 16.1-278.2. Inglese and Latham appealed to the circuit court, which heard the matter de novo on August 27, 2021. The circuit court affirmed the JDR court's finding of abuse or neglect and entered dispositional and adjudicatory orders transferring custody of R.I.L. to the Department. Inglese appealed the circuit court's finding of abuse or neglect to this Court, and we affirmed the circuit court's judgment on July 19, 2022. *See Inglese v. Albemarle Cnty. Dep't of Soc. Servs.*, No. 1007-21-2 (Va. Ct. App. July 19, 2022).

Between March 2021 and January 2022, the Department filed three successive foster care plans, pursuant to Code § 16.1-281. The Department filed the first foster care plan on April 20, 2021, listing the goal of "[r]eturn to [o]wn [h]ome" and a concurrent goal of "[r]elative [p]lacement." It filed a second foster care plan on August 2, 2021, listing the goal of "[r]eturn to [o]wn [h]ome" and a concurrent goal of "[a]doption." On September 1, 2021, the JDR court rejected the second foster care plan and ordered the Department to submit a new plan. The Department filed a third foster care plan on September 13, 2021 with the goal of "[a]doption" and a concurrent goal "[t]o [b]e [d]etermined."

On November 3, 2021, the Department filed a petition for termination of Inglese's residual parental rights. After a hearing on November 22, 2021, the JDR court entered an order terminating Inglese's residual parental rights under Code § 16.1-283(B) and (C)(2). The JDR court also entered a permanency planning order approving the third foster care plan. Inglese appealed both orders to the circuit court, which held a de novo hearing on January 12, 2022.

During the de novo hearing, Inglese admitted that she did not complete any of the programs that the Department had asked her to complete. Instead, she "became involved with a church" where she taught "a class about nature," and she "also joined a mom meeting group about home-schooling." When asked why she did not take part in parent coaching and a psychological evaluation, Inglese replied, "I don't believe in that spiritually." Inglese refused to answer questions about her income. She also could not explain who owns the home where she lives and denied paying a mortgage or rent, instead explaining that she came to live in the home through "good Karma." Inglese denied any wrongdoing in her care of R.I.L. and maintained that her child "was not in danger of starvation." Inglese also disputed that she had been diagnosed with schizophrenia and would not discuss her prior hospitalization for her psychiatric issues.

R.I.L.'s paternal grandmother, Henrietta "Penny" Latham ("Penny"), testified for Inglese at the hearing. Penny testified that she was willing to have a positive, continuous relationship with R.I.L. if given custody of him, that she had a home that was suitable for R.I.L., that she had the ability to protect R.I.L. from future abuse and neglect, and that she would be able to hold boundaries with respect to R.I.L.'s contact with his parents. Inglese's counsel asserted that Penny was a person with a legitimate interest and asked the circuit court to consider granting Penny custody of R.I.L. if the court terminated Inglese's parental rights.

At the conclusion of the hearing, the circuit court terminated Inglese's parental rights to R.I.L. under Code § 16.1-283(B) and (C)(2) and granted custody of R.I.L. to the Department.

The circuit court also stated that it was not granting custody of R.I.L. to Penny at that time.  The circuit court entered an order for involuntary termination of residual parental rights and a foster care review order on February 28, 2022.  The circuit court did not communicate to the parties, either orally or in writing, the basis for its decision not to grant custody of R.I.L. to Penny.  This appeal followed.

ANALYSIS

I.

Inglese first argues that the circuit court erred by failing to communicate, either orally or in writing, its basis for not granting custody to a person with a legitimate interest—the child's paternal grandmother, Penny[2]—as is required by Code § 16.1-283(A).[3]  Code § 16.1-283(A) states that, in termination of parental rights cases, "the court shall give a consideration to granting custody to a person with a legitimate interest, and if custody is not granted to a person with a legitimate interest, the judge shall communicate to the parties the basis for such decision

---

[2] We disagree with the Department's contention that Penny did not qualify as a person with a legitimate interest, as she was R.I.L.'s paternal grandmother, she was properly before the court during the termination hearing, and she testified to all the requisite factors in Code § 16.1-283(A1) to be considered eligible to be granted custody of R.I.L.  *Cf.* Code § 20-124.1 (defining "person with a legitimate interest" as including grandparents, provided that such person "is . . . properly before the court").  Nothing in Code § 16.1-283 indicates that only a person who has filed a formal petition for custody can qualify as a person with a legitimate interest.

[3] We disagree with the Department's contention that Inglese lacks standing to raise this assignment of error.  "The purpose of requiring standing is to make certain that a party who asserts a particular position has the legal right to do so and that his rights will be affected by the disposition of the case."  *Goldman v. Landsidle*, 262 Va. 364, 371 (2001).  Inglese was the parent who was the subject of the termination proceedings in this case.  Therefore, she had the legal right to assert on appeal that the circuit court failed to follow any applicable statutory requirements during the proceedings.

either orally or in writing."[4] "An issue of statutory interpretation is a pure question of law which we review de novo." *Kozmina v. Commonwealth*, 281 Va. 347, 349 (2011).

"Under Virginia law, 'the use of the term "shall" in a statute is generally construed as directory rather than mandatory,' and, consequently, no specific, exclusive remedy applies unless 'the statute manifests a contrary intent.'" *Rickman v. Commonwealth*, 294 Va. 531, 538 (2017) (quoting *Hood v. Commonwealth*, 280 Va. 526, 541 (2010)). "[A] statute directing the mode of proceeding by public officers is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute." *Jamborsky v. Baskins*, 247 Va. 506, 511 (1994) (quoting *Commonwealth v. Rafferty*, 241 Va. 319, 324 (1991)). "[A] 'shall' command in a *directory* statute carries no specific, exclusive remedy. Instead, it empowers the court to exercise discretion in fashioning a tailored remedy, if one is called for at all." *Rickman*, 294 Va. at 537. When a court must decide the appropriate remedy for a violation of a directory statute, "it should undertake a 'commonsense balancing' of the harm resulting from the violation." *Reyes v. Commonwealth*, 297 Va. 133, 142 (2019) (quoting *Rickman*, 294 Va. at 541). "Any determination whether a defendant has suffered prejudice constituting a denial of due process must be made on a case-by-case basis." *Jamborsky*, 247 Va. at 511.

Here, Code § 16.1-283(A) does not provide any specific remedy where a trial court fails to communicate to the parties its basis for not granting custody to a person with a legitimate interest. Nor does the statute contain any prohibitory or limiting language indicating that a trial court's failure to perform this statutory requirement renders the termination proceedings invalid.

---

[4] Inglese's first assignment of error assigns error only to the circuit court's failure to communicate its basis for not granting custody to Penny and does not allege that the circuit court failed to give consideration to granting custody to Penny. "This Court is limited to reviewing the assignments of error presented by the litigant. Consequently, we do not consider issues touched upon by the appellant's argument but not encompassed by [her] assignment of error." *Banks v. Commonwealth*, 67 Va. App. 273, 289-90 (2017) (citations omitted). Therefore, we will only consider the precise issue raised by Inglese in her first assignment of error.

Thus, this statutory requirement is directory and procedural, rather than mandatory and jurisdictional, which means that the circuit court's failure to adhere to this requirement is not a per se basis for reversing the circuit court's judgment. The only question remaining is what the appropriate remedy should be for the violation. Since "due process requires the trial courts to comply strictly with the statutory scheme for disposition of child custody cases," *Rader v. Montgomery Cnty. Dep't of Soc. Servs.*, 5 Va. App. 523, 528 (1988), we hold that the appropriate remedy is to remand for the circuit court to communicate to the parties, either orally or in writing, its basis for not granting custody of R.I.L. to Penny Latham.

## II.

Inglese secondly argues that the circuit court erred in terminating her parental rights because the third foster care plan filed by the Department did not document that termination of her parental rights was in the child's best interests, as is required by Code § 16.1-283(A). Code § 16.1-283(A) states that "[n]o petition seeking termination of residual parental rights shall be accepted by the court prior to the filing of a foster care plan, pursuant to § 16.1-281, which documents termination of residual parental rights as being in the best interests of the child." Inglese concedes that she did not present this argument to the circuit court but asks this Court to consider the argument under the ends-of-justice exception to Rule 5A:18.

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). "This Court considers two questions when deciding whether to apply the ends of justice exception: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)).

"In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt*, 66 Va. App. at 210 (alteration in original) (quoting *Redman*, 25 Va. App. at 221).

Having reviewed the third foster care plan filed by the Department, we are not convinced that the plan affirmatively shows that the Department failed to document that termination of Inglese's parental rights was in R.I.L.'s best interests. Although not explicitly using words to that effect, the foster care plan comprehensively lays out all of the circumstances of the case justifying the conclusion that termination of Inglese's parental rights was in R.I.L.'s best interests, including Inglese's refusal to participate in all the services recommended by the Department, R.I.L.'s malnourishment and subsequent improvement in health while living with his foster family, the critical need for permanency for R.I.L. as a developing infant, Inglese's unmet mental health needs and history of hospitalizations for various psychiatric issues, Inglese's failure to recognize how her actions endangered R.I.L., and her inability to ensure that R.I.L.'s needs were appropriately met. Under these circumstances, we cannot say that the circuit court's decision to terminate Inglese's parental rights resulted in a miscarriage of justice. Therefore, we will not apply the ends-of-justice exception here.

## III.

Inglese finally argues that the circuit court's termination of her parental rights under Code § 16.1-283(B) and (C)(2) was premature because the circuit court's termination decision under these two subsections was based on a prior finding of abuse or neglect that was still on appeal to this Court at the time the termination decision was made.

Assuming without deciding that the circuit court's termination decision under subsections (B) and (C)(2) relied on the circuit court's prior finding of abuse or neglect, we hold that the issue is moot. "Generally, a case is moot . . . when the controversy that existed between litigants

- 9 -

has ceased to exist." *Va. Mfrs. Ass'n v. Northham*, 74 Va. App. 1, 18 (2021) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452 (2013)). Although a live controversy regarding the abuse or neglect finding existed at the time of the termination hearing on January 12, 2022, that controversy ceased to exist on July 19, 2022, when this Court affirmed the circuit court's abuse or neglect finding. *See Inglese*, No. 1007-21-2. Moreover, this is not an exceptional situation where "the underlying controversy is one capable of repetition, yet evading review," *Northham*, 74 Va. App. at 19 (quoting *Ingram v. Commonwealth*, 62 Va. App. 14, 22 (2013)), because Inglese cannot be subjected to repeated termination petitions for the same child. For all intents and purposes, the circuit court's termination decision with respect to R.I.L. is final and permanent.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed, and the case is remanded for the circuit court to communicate to the parties, either orally or in writing, its basis for not granting custody of R.I.L. to his paternal grandmother, Penny Latham, pursuant to Code § 16.1-283(A).

*Affirmed and remanded.*