COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Raphael and Bernhard
Argued at Arlington, Virginia


EMAD M. AL BAZ

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0458-25-4              JUDGE DAVID BERNHARD
                                                    MARCH 31, 2026
RAAD SALEH


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Robert P. Coleman, Judge

Alex Heidt (The Heidt Law Firm, PLLC, on briefs), for appellant.

Warner F. Young, III (David R. Mahdavi; Mahdavi, Bacon, Halfhill
& Young, PLLC, on brief), for appellee.


        Emad M. Al Baz challenges the circuit court's judgment awarding $10,000 to Raad Saleh

for a loan on which Al Baz defaulted.  Al Baz asserts that Saleh lacked standing to bring the

claim because Nova Distro, Inc., a company Saleh controls, issued the loan payment and is the

proper party in interest.  Al Baz also argues that the circuit court erroneously denied his motion

to compel production of information relating to Saleh's corporate interests.

        This Court finds Al Baz's challenge to the demurrer ruling was waived because his

demurrer failed to articulate a standing argument with the specificity required by Rule 5A:18 and

Code § 8.01-273(A).  Further, his challenge to the denial of his motion to compel is

unreviewable because he filed no transcript or written statement of facts for that hearing.  Rule

5A:8(b)(4)(ii).  We otherwise affirm the judgment of the circuit court as Saleh had standing to

---

* This opinion is not designated for publication.  See Code § 17.1-413(A).

maintain his claim: both owners of Nova testified the $10,000 belonged to Saleh personally, and Nova disclaimed any interest in the debt, so no derivative action was required.

## BACKGROUND[1]

Saleh operates approximately 55 tobacco product retail stores, each through separate corporations. Saleh is the president of each company, the sole owner of some of the companies, and a partial owner of others. One of the companies is Nova Distro, Inc. Saleh has a 60 percent ownership interest in Nova, and his business partner, Hnsar Al Mugari, has a 40 percent interest. Al Mugari is the manager and CFO of Nova.

Al Baz began working for Saleh in June of 2020, doing graphic design, sign-making, and marketing. Al Baz was an employee of Nova, although he did work for several of Saleh's shops. Nova paid Al Baz's salary in cash, at a rate of $5,000 per month from June 2020 to August 2020, and $7,000 per month from September 2020 to July 2021.

In October, 2020, Al Baz purchased a car from Pohanka Lexus. Nova issued a check for $10,000 to Pohanka Lexus to help with Al Baz's down payment on the car. According to Saleh, the payment constituted a personal loan from him to Al Baz based on an oral agreement. Although Nova made the payment, the $10,000 allegedly belonged to Saleh individually.[2] Saleh signed the

---

[1] When a court renders a judgment after a bench trial, we "view the evidence and all reasonable inferences drawn from it in the light most favorable to . . . the prevailing party at trial." *Moncrieffe v. Deno*, 76 Va. App. 488, 496 (2023) (quoting *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017)). Saleh prevailed on the issue appealed to this Court.

[2] The evidence does not show whether the funds were income owed to Saleh, a distribution to Saleh as a shareholder, or belonged to Saleh in some other way. This evidentiary gap does not undermine the standing determination. Both owners of Nova, Saleh and Al Mugari, testified without contradiction that the funds belonged to Saleh personally, and Al Mugari confirmed Nova asserts no claim against Al Baz. The circuit court, sitting as factfinder, was entitled to credit that testimony.

check, the memo line of which states that it was "With Emad for the car."[3]  The loan carried no interest and was to be repaid within a reasonable time.

Saleh initiated this action two years later, alleging that Al Baz never paid him back.  Saleh further claimed that he had made other loans to Al Baz totaling $25,000, which Al Baz also had not paid back.  These claims were based on three other checks written by other corporate entities controlled by Saleh, as well as a cash payment.  In the operative complaint, Saleh asserted breach of contract, and, in the alternative, unjust enrichment claims.[4]

Al Baz demurred.[5]  As relevant to this appeal, the demurrer stated that the $10,000 check from Nova to Pohanka Lexus, which was attached to the complaint, was "a check from Nova Distro, Inc." and "Nova Distro Inc. is not a Plaintiff in this matter."  The demurrer did not otherwise elaborate on the argument or cite to legal authority.  After a hearing, the circuit court overruled the demurrer.

During discovery, Al Baz requested certain information from Saleh, including through interrogatories and requests for production.  In interrogatory number five, Al Baz sought information relating to "all companies in which [Saleh] hold[s] a controlling interest," as referenced in the complaint (Saleh alleged in his complaint that he owns a controlling interest in "approximately 45 legal entities that operate retail tobacco stores across Virginia").  In requests

---

[3] At trial, the court translator noted that the line, written in Arabic, could also mean, "With Emad for the price of the car."

[4] Saleh's original complaint included other claims.  Al Baz demurred, and the circuit court sustained it in part and overruled it in part.  Neither party assigned error to the circuit court's ruling on the first demurrer.  Saleh then filed the operative amended complaint.  Saleh also asserted claims for injunctive and declaratory relief in his amended complaint, but he later moved to nonsuit them, which the circuit court granted, dismissing the claims without prejudice.

[5] Al Baz also filed a seven-count counterclaim based on business dealings between Saleh and him, alleging breach of contract, unjust enrichment, fraud, and conversion.  Al Baz moved to nonsuit his counterclaim at trial, and the circuit court granted the motion, dismissing his counterclaims without prejudice.

for production three and four, Al Baz requested "[a]ll operating agreements for any business in which [Saleh is] a member, or manager" and "[a]ll corporate documents for which [Saleh has] a controlling interest in." Saleh objected to each of these demands as overly burdensome and requesting irrelevant information. Al Baz moved to compel Saleh to produce this and other information. After a hearing, the circuit court granted the motion in part and denied it in part. The court denied it as to interrogatory number five and requests for production three and four without explanation.[6]

At trial, Saleh explained the nature of the loan and further testified that Nova "is a company that I own, and I had money in that account at that time where I wrote [the $10,000] check." Al Mugari testified that he was aware of the transaction in his capacity as Saleh's business partner and manager of Nova. Al Mugari noted that although Saleh consulted with him before making the payment, Al Mugari was not involved in negotiating the loan. He explained that he had no say in setting the terms of the loan "because [Saleh] has the majority and if he takes anything, it will be deducted out of his portion." Finally, Al Mugari confirmed that Nova did not assert any claim against Al Baz.

After Saleh concluded his case in chief at trial, Al Baz moved to strike the evidence, arguing that the loans, if any existed, were made by the companies that wrote the checks, so Saleh did not have standing to bring this action. Al Baz argued that Saleh would need to bring derivative actions on behalf of the companies, but he had not done so. The circuit court denied the motion, concluding that the loans were personal loans and Saleh did not need to sue in the name of the companies.

---

[6] No transcript or written statement of facts in lieu of a transcript was filed for the discovery motion hearing.

In his defense, Al Baz testified that the $10,000 check was not a loan, but rather a payment of his salary for two months. At the conclusion of the evidence, Al Baz renewed the motion to strike on the same basis as the original motion, and the circuit court denied it again.

The court found for Saleh on his claim for the $10,000 loan. The court concluded that although Nova issued the check, Saleh used funds he personally owned, "either from his salary or draw or separate profit share, and not from the business entity itself." The court noted that Al Mugari's testimony supported the conclusion that Saleh "loaned [Al Baz] money out of his personal share of" Nova. The court concluded that Saleh was authorized to and did use his own money to make the loan to Al Baz.

The court rejected Al Baz's argument that the $10,000 was part of his wages as an employee of Nova. The court noted that Nova paid Al Baz's salary in cash, not checks. The court also noted that his salary was $7,000 per month when the check was issued, so it would likely be for $14,000, not $10,000, if it were for wages. Moreover, the check would be a double payment on top of the cash payments that the evidence showed Al Baz had received. The court found for Al Baz on Saleh's other claims. Thus, the court entered judgment for Saleh for $10,000 with interest beginning the date of the order.

Al Baz appealed. He argues that the circuit court erred in overruling his demurrer, denying his motions to strike, and finding that Saleh had standing to assert the claim. Each argument relies on the same premise: that the circuit court should have found Saleh had no standing to bring the claim other than as a shareholder asserting a derivative action on behalf of Nova. Al Baz also asserts that the circuit court erred by denying his motion to compel discovery responses to interrogatory number five and requests for production numbers three and four.

ANALYSIS

*I. Waiver*

 *A. Demurrer*

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). A party waives his argument on appeal if he fails to make the argument to the circuit court with sufficient timeliness and specificity. *Id.*; Rule 5A:18. Additionally, Code § 8.01-273(A) requires a demurrant to "'state specifically the grounds on which the demurrant concludes that the pleading is insufficient at law,' and '[n]o grounds other than those stated specifically in the demurrer shall be considered by the court.'" *Theologis v. Weiler*, 76 Va. App. 596, 604 (2023) (alteration in original) (emphasis omitted) (quoting Code § 8.01-273(A)).

In his demurrer to the amended complaint, Al Baz neither asserted that Saleh lacked standing, nor that Saleh should have brought a derivative action on behalf of Nova. Al Baz stated only that the $10,000 check attached as an exhibit to the complaint was "a check from Nova Distro, Inc." and "Nova Distro Inc. is not a Plaintiff in this matter." Al Baz made no attempt to connect logically these statements to any conclusion, nor did Al Baz cite any legal authority or otherwise mention or discuss the concept of standing. Thus, Al Baz failed to make the argument to the circuit court with sufficient specificity to give the court an opportunity to rule on it at the demurrer stage, and his argument that the court should have sustained the demurrer is waived

- 6 -

under Rule 5A:18. *See Hogle*, 75 Va. App. at 755. Although there are exceptions to Rule 5A:18, Al Baz has not invoked them, and we do not apply them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

### B. Motion to Compel

"On appeal, we presume the judgment of the trial court is correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the trial court has erred in the respect alleged by [the] appellant." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012). Without a sufficient record, "we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)). Consistent with this principle, "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii).

A circuit court's decision to grant or deny a motion to compel is discretionary and "'will not be reversed on appeal unless "the action taken was improvident and affected substantial rights."'" *Townes v. Va. State Bd. of Elections*, 299 Va. 34, 51 n.4 (2020) (quoting *O'Brian v. Langley Sch.*, 256 Va. 547, 552 (1998)). "Rule 4:1(b)(1) provides, in pertinent part, that 'parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.'" *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Cap. Corp.*, 249 Va. 426, 438-39 (1995). The circuit court can limit "the frequency or extent of" discovery methods under Rule 4:1(b)(1), if, for example, "the discovery is unduly burdensome or expensive." Rule 4:1(b)(1); *see Nizan v. Wells Fargo Bank Minn. Nat'l Ass'n*, 274 Va. 481, 500 (2007).

Al Baz argues on appeal that the circuit court erred by not granting his discovery requests, at least with respect to the companies involved in the case. But in his motion to

compel, Al Baz asserted only that Saleh refused to provide discovery "in an effort to prejudice Al Baz's case." Al Baz did not include any argument about the relevance of the information he requested, nor how burdensome it might be for Saleh to produce the information. Nor did he make any alternative request that the circuit court grant discovery limited to the companies listed on the checks. The circuit court's order does not explain what issues it considered in deciding the motion.

We have no transcript or written statement of facts for the hearing on the motion, so we cannot know what arguments the parties presented to the circuit court at the hearing, nor if Al Baz preserved the arguments he makes on appeal. *See* Rule 5A:18. Nor do we know what reasons, if any, the circuit court gave for its rulings. The court's order does not provide this information. Thus, a transcript or written statement of facts for the hearing is "necessary to permit resolution" of the issues, and we cannot consider them. Rule 5A:8(b)(4)(ii); *see Dixon*, 71 Va. App. at 716; *Duva v. Duva*, 55 Va. App. 286, 299 (2009) ("Because the record does not show that the trial court ruled on appellant's argument, there is no ruling of the trial court for this Court to review on appeal."). Al Baz's arguments relating to the motion to compel are waived. *See* Rule 5A:8(b)(4)(ii); *Dixon*, 71 Va. App. at 716; *Duva*, 55 Va. App. at 299.

*II. Standing, Motion to Strike, and Judgment*

"Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Morgan v. Bd. of Supervisors*, 302 Va. 46, 58 (2023) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). "The purpose of requiring standing is to make certain that a party who asserts a particular position has the legal right to do so and that his rights will be affected by the disposition of the case." *Kelley v. Stamos*, 285 Va. 68, 73 (2013) (quoting *Goldman v. Landsidle*, 262 Va. 364, 371 (2001)). Thus, standing "is a preliminary jurisdictional issue having no relation to the substantive merits of an action." *Morgan*, 302 Va.

at 58 (quoting *McClary v. Jenkins*, 299 Va. 216, 221 (2020)). The "doctrine asks only whether the claimant truly has 'a personal stake in the outcome of the controversy.'" *Id.* at 59 (quoting *McClary*, 299 Va. at 222). The party claiming standing has the burden to demonstrate it. *Kelley*, 285 Va. at 73. "We review de novo the legal issue of whether a plaintiff has standing." *Eye Consultants of N. Va., P.C. v. Shaw-Mcdonald*, 304 Va. 164, 170 (2025).

Al Baz does not challenge the validity of the loan on appeal; rather, Al Baz's sole argument is that Nova, not Saleh, gave him the loan, and therefore the claim is Nova's, not Saleh's, to bring. Thus, the question we must answer is whether Saleh demonstrated that the claim is his. We conclude that he did.

Saleh and Al Mugari testified that the $10,000 payment was made from funds belonging to Saleh. Although the evidence does not show exactly the source of the funds (income, shareholder distribution, etc.), both of the company's two owners testified that the money was Saleh's. Moreover, there is no evidence that the payment was made for any separate corporate purpose other than paying Saleh funds belonging to him by providing the payment to Pohanka Lexus at his direction.[7] Al Mugari—Nova's manager—explicitly testified that Nova claims no debt from Al Baz. Thus, Nova has suffered no harm, and Saleh demonstrated that he "has 'a personal stake'" in the case: he owns the outstanding debt. *Morgan*, 302 Va. at 59 (quoting *McClary*, 299 Va. at 222). Al Baz's arguments that Saleh failed to meet the requirements of a derivative shareholder action are inapposite. "A derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation

---

[7] The transaction might alternatively be characterized as a distribution or advance to Saleh by Nova, memorialized through the corporate check, which Saleh then directed to Pohanka Lexus on Al Baz's behalf. Under either characterization, the result is the same: both owners of Nova agreed the funds belonged to Saleh, and Nova disclaimed any interest in recovering the debt. We therefore need not decide the precise corporate-law mechanism at play.

rather than the shareholder." *Simmons v. Miller*, 261 Va. 561, 573 (2001). The claim in this case was shown to belong to Saleh, not Nova, so Saleh did not need to bring a derivative action.[8]

## CONCLUSION

Al Baz failed to raise the standing argument in his demurrer, so he waived his challenge to the circuit court's demurrer decision on appeal. Rule 5A:18. Al Baz did not file a transcript or written statement of facts in lieu of a transcript for the hearing on his motion to compel, so we cannot tell whether he preserved his related arguments. Thus, a transcript or written statement of facts in lieu of a transcript is necessary to resolve those issues, which are therefore waived on appeal. Rule 5A:8. The circuit court correctly concluded that Saleh has standing in this case to recover a loan debt because he supplied the funds that constituted the loan's principal. Thus, the circuit court did not err by denying Al Baz's motions to strike and by entering judgment for Saleh, and we affirm the judgment.

*Affirmed.*

---

[8] Al Baz did not argue below, nor does he argue on appeal, that the doctrine of reverse veil piercing applies. Virginia recognizes reverse veil piercing in limited circumstances where a corporate insider abuses the corporate form to evade personal obligations or perpetrate injustice. "In a reverse piercing action, . . . the claimant seeks to reach the assets of a . . . business entity . . . to satisfy claims or a judgment obtained against a corporate insider." *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 10 (2003). We express no opinion about how that doctrine would have applied here had it been raised.